### SHIPMAN *against* HORTON and another.

*Hartford,*
*June, 1846.*

Shipman
*v.*
Horton.

A contract by an infant for the sale of personal property, may be rescinded by him, before he arrives at full age.

After such contract has been rescinded by the infant, and the title to the property has thus become revested in him, an action of trespass cannot be sustained against him for taking such property into his possession.

But where *A*, in an action of trespass brought by him against *B*, an infant, for the taking of certain goods, of which the greater part, he claimed, were purchased by him of *B*, but some were purchased with the avails of goods sold, and others were originally the property of *A* ; *B* did not attempt to justify the taking of the goods upon the ground that they were originally his, and were by him sold to *A*, and that he had rescinded the contract, but on the broad ground that the goods were never sold to *A*, but were delivered to *C*, an infant son of *A*, to sell and account for, (*A* being merely a surety for *C*,) and that by the terms of the contract, they were to be redelivered to *B*, whenever he chose to demand them, and that such demand had been made, and *C* had refused to deliver them—the defence proceeding, not on the ground that the contract actually made had been rescinded, but in affirmance of it—the court submitted the question of title in the plaintiff to the jury ; and a verdict was given for him ; it was held, 1. that *B* had no cause of complaint on the ground that his contract with *A* had been rescinded ; 2. that if such contract had been rescinded, still the defence did not cover the whole ground, and *A* was entitled to retain his verdict.

THIS was an action of trespass *de bonis asportatis*, against *Humphrey Horton* and *George Andross*.

The cause was tried, on the general issue, at *Hartford*, *January* term 1846, before *Williams*, Ch. J.

On the trial, the plaintiff claimed to have proved, that he contracted with the defendant *Horton*, who had been in the business of a peddler, to purchase goods suitable for that business, and instruct *Albert*, the plaintiff's minor son, in such business ; that the plaintiff would buy said goods of *Horton*, at an advance of ten *per cent.* upon the cost, and give his note therefor to *Horton*, payable in three months ; and that said agreement was carried into effect, by both the parties ; that within ten days thereafter, while *Albert* was proceeding in his business as a peddler, with the goods so bought and others purchased with the avails thereof, he was overtaken by *Horton*, with the defendant *Andross*, who was a constable of the town of *Glastenbury*, in the town of *Portland*, and there, under process of law, *viz.* a writ in favour of *Horton* against *Albert*, directed to a constable of the town of *Glastenbury*, the defendant seized and carried away said goods, and also a watch in *Albert's* possession, the property of the plaintiff.

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

Shipman
*v.*
Horton.

The defendants claimed, that *Horton* purchased the goods for himself, and put them into the hands of *Albert*, to peddle on his account, under an agreement, that he would sell them, and account with him for them, or return them to him; that *Horton* should have a right to stop *Albert*, and take back the goods at his pleasure; that the plaintiff was a mere surety for *Albert;* that *Albert* refused to account and make return, after demand; and that then *Horton* procured the writ referred to, and with it, in the hands of *Andross*, proceeded a little over the line of *Glastenbury*, where they overtook *Albert;* and that he voluntarily returned with them to *Horton's* house in *Glastenbury*, and there made a settlement of the whole business; that he delivered up the goods claimed by the plaintiff, and received in return the security given by the plaintiff to *Horton*, and delivered it to the plaintiff, which was by him lost or destroyed; and that the plaintiff had paid nothing to *Horton* for the goods in question. But it was not claimed, that the plaintiff had assented to the return of the goods to *Horton*, or to the arrangement claimed to have been made between *Albert* and him. The defendants also claimed, that until after this action was commenced, the defendant *Horton* was a minor, and that being a minor, he had a right to rescind the contract he had made, whether with the plaintiff or *Albert*, and retake the goods as his own, and had a right to take *Andross* to his assistance; and that, by virtue of said retaking and settlement, the title of the goods was revested in him; and so the plaintiff could not recover. The defendant further claimed, that even if the facts were as claimed by the plaintiff, the plaintiff having given authority to *Albert* to peddle the goods, *Albert* had a right to dispose of them as he had done, by said settlement; and so the plaintiff could not recover for the taking of the goods. And the defendants requested the court to charge the jury in conformity with their claims.

The court instructed the jury, that if the title to the goods was in the plaintiff, as he claimed, the inquiry would be, whether the taking was lawful; that although a minor might avoid his contract, yet an attempt to take the goods under process of law, by a writ founded on the contract, would be evidence tending to show that he did not rescind the contract; and though he might rescind his contract and reclaim the goods, he must do it in a peaceable manner, and not by the

*Hartford,*
June, 1846.

Shipman
*v.*
Horton.

perversion of legal process; that if the goods were taken, as claimed, by a constable of the town of *Glastenbury*, in the town of *Portland*, under the colour of legal process, when he had none, or was out of his jurisdiction, and by virtue thereof the goods were seized, by one of the defendants, under the direction of the other, it formed no justification for the defendants; and if under the impression that they were taken under legal process, any settlement made with *Albert* could not affect the right of the plaintiff.

The jury returned a verdict for the plaintiff, for 36 dollars damages; and the defendants moved for a new trial for a misdirection.

*Hungerford*, in support of the motion, contended, 1. That the defendant *Horton* had a right to rescind the contract with the plaintiff, and regain the possession of the property, and for that purpose, to take to his assistance the other defendant *Andross*.

2. That the effect of regaining and holding the possession of the property by *Horton* upon the title, was the same, whether it was regained peaceably or by stratagem, under colour of process, or by force; and in either mode, it would utterly destroy the title of the plaintiff. *Taunton* v. *Costar*, 7 *Term R.* 431. *Turner* v. *Weymott*, 1 *Bing.* 158. (8 *E. C. L.* 280.) *Butcher* v. *Butcher*, 7 *B. & Cres.* 399. (14 *E. C. L.* 59.) *Yeates* v. *Allen*, 2 *Dana* 134. Earl of *Bristol* v. *Wilsmore*, 1 *B. & Cres.* 514. (8 *E. C. L.* 146. 1 *Chitt. Gen. Pract.* 646. *Williams* v. *Norris*, 2 *Little* 157.

*T. C. Perkins* and *Chapman*, contra.

WILLIAMS, Ch. J. The defendants insist, that *Horton*, being an infant, had a right to rescind his contract, and retake his goods. The plaintiff admits, that he might have avoided it at full age, but not while he remained an infant.

In case of a deed of land by an infant, it seems to be settled, that the conveyance cannot be avoided until the infant arrives at full age, and in case of marriage, not until he arrives at the age of consent. *Zouch* v. *Parsons*, 3 *Burr.* 1808. 3 *Bac. Abr. tit.* Infancy. A. And we have found no case, in which this doctrine has been extended to personal property, except

HARVARD LAW LIBRARY

*Hartford,*
*June, 1846.*

*Shipman*
*v.*
*Horton.*

that of *Roof* v. *Stafford,* 7 *Cow.* 179. which was reversed by the highest court of the state.  9 *Cow.* 626.   And when we consider, that if this was so, the infant would, in many cases, by the use or loss of the property, be deprived of the benefit of this principle, we concur with the final decision of that case, and with the court below ; and hold, that such a contract might be avoided by the infant, before he was of age.   So too we concur in the general principle laid down by the judge at the trial, that the recapture of personal property by the owner, must be made in a peaceable manner, and not by the perversion of legal process.   And it is certain, that under such a claim a person cannot justify an assault and battery.   *Sampson* v. *Henry,* 11 *Pick.* 379.   *Gregory* v. *Hill,* 8 *Term R.* 299. But this is not a case of that character, but an action of trespass for the goods themselves.   And we have, at this term, in the case of *Bowler* v. *Eldridge,* (a) decided, that a person has a right to retake his personal property from the unlawful possession of another.   Of course, it must follow, that if this contract has been rescinded by *Horton,* and the title thus revested in him, an action of trespass could not be sustained against him for taking the goods.

But upon an attentive consideration of the facts stated in this case, and the respective claims of the parties on the trial, we are of the opinion that the charge upon this point could not have affected the proper termination of the cause.

The plaintiff claimed to have purchased most of the goods in dispute of *Horton,* but that other goods of his were also taken, together with the avails of goods sold ; and as to the taking of these goods, there was no dispute.   Had then the defendants attempted to justify the taking of the goods, upon the ground that they were originally *Horton's,* and sold by him to the plaintiff, and that he had rescinded the contract thus made with the plaintiff; it is apparent, that the defence would not have been as broad as the claim of the plaintiff; because it was not denied, that other property was taken by *Horton* than that which was sold or delivered by him.   The defendants, therefore, took other and broader ground, *viz.* that the goods were never sold by *Horton* to the plaintiff, but that they were delivered by him to the infant son of the plaintiff, to sell and

(a) *Fairfield* county, *post.*

account for; and that the father was merely surety therefor; and that, by the contract itself, they were to be re-delivered to him, by *Albert*, whenever he chose to demand them; that such a demand was made, and *Albert* refused to deliver them; after which he procured the writ and a surrender of the goods. And no evidence was given or claim made, that any contract with the plaintiff was ever rescinded by *Horton*, unless these transactions with *Albert* furnished such evidence. Nor was the court requested to charge the jury, that these facts were evidence tending to show a rescinding of the contract.

So far from any claim, in fact, of a rescinding of the contract with the plaintiff, the whole defence proceeded upon the ground that no contract was ever made with him. And even as it respects the contract claimed to have been made with *Albert*, the defence proceeded, not on the ground that the contract had been rescinded, but in affirmance of the contract. *Horton* claimed, that by virtue of the contract itself, he had a right to stop *Albert*, whenever he was dissatisfied, and to take the goods originally purchased, together with the avails of them; and thereupon in the settlement, no distinction was made between the goods originally purchased, and those which had since been procured by *Albert*, from the avails of the goods sold.

The case then stands thus; for the question of title was distinctly submitted to the jury. The goods were sold by *Horton* to the plaintiff. The plaintiff's case rested entirely on this; and the jury must have so found.

Is there, then, any single fact stated, tending to show that the defendant, *Horton*, had rescinded this contract?

So far from it, he denies there ever was any contract with him. He also denies any contract of sale with any one, but that he placed the goods in the hands of *Albert*, as his agent; and that so far from rescinding that contract, he has acted throughout in pursuance of it. Whatever, therefore, might be the opinion of the court, upon the charge, as applicable to a supposed case, we think the defendants have shown no cause of complaint; because, upon the facts stated in this motion, we do not see any foundation laid for a claim that the contract with the plaintiff had been rescinded. On the contrary, the whole character of the defence is inconsistent with such a claim.

*Hartford,*
June, 1846.

Shipman
*v.*
Horton.

Were it not so, it is apparent that the defence did not cover the whole claim of the plaintiff. For if the contract with the plaintiff had been rescinded, we do not see how that would have vested in *Horton* a title to that portion of the goods which was never owned by him, but which was purchased from the avails of the goods then clearly the plaintiff's.

If an infant sells a horse and wagon, and the purchaser sells the horse and buys another, it will hardly be claimed, that if the infant avoids the contract, the last horse is his. So here, the watch and other articles, the avails of the goods sold, cannot become the property of *Horton*, and the plaintiff must recover therefor, unless another claim of the defendants is well founded, *viz.* that the settlement with *Albert* transferred this and all the property to *Horton*. This has not been much insisted on; but it forms part of the case. The plaintiff had put these goods into the hands of a minor son, to furnish him with employment as a peddler; and as he had authority thereby to peddle and sell the goods, it is supposed he had a right thereby to deliver them in payment of a debt not then due to *Horton*, who must be supposed cognizant of all the facts relating to this transaction. The object of the plaintiff was, to fit his son for this business: for this he bought the goods, and placed his son under the direction of *Horton*. To say that because he gave his son power to sell these goods, as a peddler, it gave him power to sell them in a lump, to pay a debt not due, is to give a very broad construction to this power. To say that a clerk in a retail shop, because he had a right to sell goods, had a right to sell them in a lump, in payment of the merchant's debts, would hardly be contended; and yet in this case, it must be claimed, that a minor son might make such a disposition of the property, as would entirely defeat the object of the purchase, and terminate the sole intent for which it was made.

Such a construction would be in the face of the principle, that all powers are to depend upon " the substantial intention and purpose of the party," as is said by Lord *Mansfield,* in *Ren* v. *Bulkeley, Doug.* 293. We think there is no foundation for this argument. The plaintiff then must have been entitled to recover for some part of this property; and although we do not know the comparative value of the property originally sold, and that which has been since acquired, yet when

HARVARD LAW LIBRARY

*Hartford*,
June, 1846.

Shipman
*v.*
Horton.

we look at the sum given in damages, we should hesitate in opening this case, to see how much that sum should be reduced, if this had been the only question.

We have no rule, as in some of the courts in *England*, that we will not grant a new trial where the sum in controversy is less than 20*l*.  *Jones* v. *Dale*, 9 *Price*, 592.   But where the mistake, if any, can make but trifling difference, we should be disposed to follow the practice in *New-York*, and deny a new trial.   *Hyatt* v. *Wood*, 3 *Johns. R.* 239.

In this opinion the other Judges concurred.

New trial not to be granted.