Heath *v.* West.

We think that the exceptions must be overruled, and that there must be

*Judgment on the verdict.* ·

HEATH *v.* WEST & *a.*

26 | 191
68 | 46

Common reputation is not evidence of the qualities or value of a horse.

The charge of an accoucher for his services, and his testimony that it was correctly made at the time, is evidence on a question of minority, though he has no memory of the date.

A minor may in general avoid his contract, either before or after he arrives at full age, by any act clearly evincing an intention not to be bound by it.

A mortgage may be considered as still subsisting, though formally discharged, for the benefit of one who has paid the money, so far as he ought in justice to hold the property.

The case of *Robinson* v. *Leavitt,* 7 N. H. Rep. 73, affirmed.

TRESPASS for taking and carrying away the plaintiff's stud horse, alleged to be valuable as a stud, and to be kept for that purpose.

The plaintiff proved that the horse was taken by G. Bellows, one of the defendants, as alleged in the declaration. The defendants put in evidence a mortgage of the horse, dated January 12, 1850, signed by the plaintiff and one Hall, to secure their note of that date to said West for $75, and interest; and proved that Bellows acted by the direction of West, and that Hall was present at each of the two takings alleged, and assented to them. The mortgage describes the horse as " the same said Heath purchased of G. J. Dennison, and now owned equally by the said Heath and. Hall."

To prove that the mortgage was executed by the plaintiff

Heath *v.* West.

while he was an infant, Dr. Dewey was called as a witness, who testified that he had long practised midwifery, and that several years ago he attended upon Mrs. Heath, when she was delivered of a son; that he could tell the precise date from recollection, but he made a charge for his services in his account book, the next morning after the birth of the child, in accordance with his uniform habit, and had no doubt of the correctness of the date upon the book. The plaintiff's counsel desired the witness to read the charge, in order to prove the time of the birth. The defendants objected to the evidence, but the objection was overruled. The plaintiff's mother was afterwards called, and testified that he was born September 27, 1829, and the defendants' counsel then said they made no further question as to his age.

The defendants first took the horse in July, 1850, and kept him some time, and the plaintiff regained his possession. The plaintiff had advertised that the horse would stand for the use of mares in Dalton and Whitefield and Lunenburgh; and when the horse was first taken from the plaintiff, he was enaged in that business. As tending to prove the damages under the first count, the court permitted the plaintiff to show that the general reputation of the horse for stock was good in Dalton, Whitefield, and Lunenburg, in the season of 1850; and that after the plaintiff was deprived of his horse, people came with mares at the places named in the advertisements, and inquired for the horse, and said they wished to put their mares to the horse.

The defendants took the horse a second time, and sold him upon the mortgage, and then gelded him.

It appeared that prior to January 12, 1850, the plaintiff purchased the horse of Dennison, paid a small part down, and gave a mortgage upon the horse to secure the remainder of the price. The $75, which constituted the consideration of the note to West, was applied to pay what was due of this residue of the purchase money. Hall, being

Heath *v.* West.

called by the plaintiff, testified that Heath hired the $75 of West, and procured the witness to sign with him; and that West handed the money to the plaintiff, who put some more with it, and paid the whole over to Dennison. Dennison, called by the defendants, testified that he came over to Lancaster, and told Heath that he must have either the money or the horse. There was talk between Heath and Hall, that Hall should pay Dennison for one half of the horse, and own one half of him. The price first agreed for the horse was $200, but Dennison told them he would accept $150, if he could have his money then. Dennison saw West, and informed Heath and Hall that West would advance the money, if he could have a mortgage on the horse. The note and mortgage before mentioned were executed to West; West paid $75 to Dennison, for Hall, as the witness supposed, and the plaintiff paid a balance still due to Dennison. Dennison proposed to assign his mortgage to West, but West said he did not want an assignment; he wanted a new mortgage; and Dennison burnt the note he held against Heath, and the old mortgage was discharged and handed to West. The defendants contended that upon this evidence it would be competent for the jury to find that West was assignee of the Dennison mortgage, but the court ruled that the jury could not be permitted so to find.

Hall testified that a few days before January 12, Heath proposed to sell him one half of the horse, and the witness took the horse to try him, and had him in his possession on that day; and then Heath told him, if he would sign the $75 note to West, he might keep the horse till spring and then return him, or pay for one half and own one half, at his election. The witness accepted this offer and signed the note, and kept the horse till spring, and then elected not to buy one half, and gave the horse up to the plaintiff, who promised to indemnify him against the note to West.

The defendants' counsel contended that the plaintiff, having given Hall possession of the horse in the manner testified

by him, could not maintain this action, but the court ruled that such fact constituted no defence for trespass committed after this possession was surrendered, and while the horse was in the plaintiff's possession.

The jury found that Hall obtained his interest in the horse of Heath, and not of Dennison, and assessed damages under the first count at $21, and under the third at $162,75. The trespasses were committed while the plaintiff was under age, and since he attained his majority he has done nothing to avoid the mortgage, except the bringing of this suit. The defendants contended that for these reasons the suit cannot be maintained, but the court ruled otherwise. The defendants excepted to all the said rulings. A verdict was taken for the plaintiffs by consent, subject to the opinion of the court, and judgment is to be entered upon it, or it is to be set aside and a new trial granted, or judgment is to be entered for the defendants, as the court may direct.

*Burns & Fletcher*, for the defendants.

I. The general reputation of a horse cannot be given in evidence. *Rochester* v. *Chester*, 3 N. H. Rep. 349; *Whipple* v. *Walpole*, 10 N. H. Rep. 130. The evidence was not more admissible in a case of a horse than it would have been in the case of a farm, and it was equally improper on either count of the declaration.

II. Heath had no title to the horse till West advanced the money. Dennison retained an interest in the horse by virtue of his mortgage, and the title was not divested out of him till West paid the money, and then the title and interest of Dennison passed directly to West, and for the same purpose for which Dennison retained it, the security of the money still due for the animal. Virtually the transaction was an assignment of his mortgage from Dennison to West. If it can be legally considered as a transfer of Dennison's interest, West had a right to dispose of the animal, notwithstanding the plaintiff's minority. If the court can see that

the whole transaction, in its substantial nature, is an assignment, the court will sustain it as such. Dennison, on receiving his pay, burned the note, discharged the mortgage, and passed it to West in presence of the parties. But payment of a mortgage debt will operate as an assignment of the security, whenever it is necessary to do justice to the parties, though in form that security has been discharged. *Robinson* v. *Leavitt*, 7 N. H. Rep. 73, 99, 101; *Rigney* v. *Willson*, 13 N. H. Rep. 252.

*J. W. & G. C. Williams*, for the plaintiff.

I. The objection to the testimony of the attending surgeon seems to be withdrawn, and is immaterial in the actual state of the evidence, the infancy being otherwise fully proved; but that the evidence was properly admitted under the general principle of entries made in the course of professional employment, appears from the case, which seems precisely parallel, of *Higham* v. *Ridgway*, 10 East 104; 1 Greenl. Ev. § 116 and note, and authorities cited.

II. The evidence relating to the damages is of the nature and proximate consequences of the injury, and the damages are specially set forth in the declaration.

III. As to the claim of the defendants, that it was competent for the jury to find that West was the assignee of Dennison's mortgage, it is difficult to see how, even if West became the assignee and should stand in the place of Dennison, it would affect the decision of the case. Allowing it to be well settled that the defendant cannot refuse payment of a note, and still hold the property for which it was given, yet there can be no doubt it is for him to make his election, and not the adult contracting with him. Ch. Con. 155; *Thompson* v. *Hamilton*, 12 Pick. 429. In this case, the plaintiff has disaffirmed the mortgage, and claimed to retain the property, but in no instance refused to pay his note, as appears in the case.

But the testimony did not shew West the assignee. If

the testimony of Hall is relied upon, then Heath hired $75 of West, procured Hall to sign as surety, and himself paid over the money, with other of his own, and discharged the original notes and mortgage. If Dennison's testimony is relied upon, then West paid the $75 to Dennison for Hall, as the purchase money for half the horse bought by Hall. Now the jury have distinctly found that Hall purchased his interest, if any, of Heath, so that in this view there would be no privity between West and Heath. But the evidence is full on all hands that West refused the assignment of the original mortgage, but required a discharge of it, and that he should retain the evidence of the discharge. He required and took different security, namely, a surety, Hall, and a new mortgage from different parties. According to the broadest rule laid down in *Robinson* v. *Leavitt*, 9 N. H. Rep. 100, it cannot be said that it was in any way the intent of the parties that this operation should be considered as an assignment of the old mortgage.

IV.   As to the exception that the possession given to Hall, as testified to by him, constitutes a defence to the action, the mortgage does not give *manual possession*, and in the most favorable view to the defence, this action would lie immediately, according to the principles in *Dearborn* v. *Eastman*, 4 N. H. Rep. 441 ; *Jackson* v. *Carpenter*, 11 Johns. 539, even if Hall was half owner of the horse, as recited in the deed, but an infant is not bound by the recitals in a deed, upon general principles ; and see Ch. Con. 143 ; *Milne* v. *Harewood*, 18 Ves. 274. Yet having purchased of Heath, as found by the jury, it was equally possible for him to disaffirm *that sale to Hall* as the mortgage *to West*, and become, as he was in fact, as found by the case, at the time of the trespasses declared for, the sole owner of the horse and in possession.

V.   So as to the next and last objection of the defence, that no disaffirmance of the mortgage has been made since the plaintiff's coming of age, except the bringing the suit, it is conceded by the case, as was proved, that the plaintiff,

when under age, disaffirmed, and gave notice of his disaffirmance before the trespasses complained of, and the point is that none are proved since coming of age.  Now we suppose a sale by an infant of personal property may be rescinded by him before coming of age.  2 Kent's Com. 236, 237; *Zouch* v. *Parsons*, 9 Cow. 626; *Boot* v. *Mix*, 17 Wend. 119; *Shipman* v. *Horton*, 17 Conn. 481, and this completely answers the two last exceptions of the defendants.  But even without disaffirmance, it seems settled that trespass lies without any act except action brought.  *Dearborn* v. *Eastman*, 4 N. H. Rep. 441; *Jackson* v. *Carpenter*, 11 Johns. 539. And in harmony with this it has frequently been decided that the contract of an infant is of no value till ratified, and until then, furnishes no cause of action.  *Aldrich* v. *Grimes*, 10 N. H. Rep. 197; *Merriam* v. *Wilkins*, 6 N. H. Rep. 437.

BELL, J.  If this action depended upon the reputation of the horse in question, if the existence and character of that reputation were material to be proved, in order to support the action, perhaps the evidence on that subject would be admissible.  But the declaration states the grievance to be the taking and carrying away of a horse of a certain value, and then useful and used for a special purpose, which was defeated by the defendant's wrongful act, to the special damage of the plaintiff.  Nothing is said or implied in the declaration as to the reputation of the horse, and of itself it was merely immaterial whether the horse had any reputation, or what it was, in any respect.  The evidence, then, must have been received as proof of something proper to be proved in the action, and we see nothing upon which such evidence could have any bearing, but the general value of the animal, or its particular value for the use interrupted by the acts of the defendants.  The question, then, is reduced to this:  Is reputation, common opinion, common report, common fame, evidence of the value of a horse, or of any fact upon which its value depends?

Would it be competent to ask a witness what is the reputed age, height, weight, speed, gentleness, soundness, and the like, of a horse; or for a witness to testify that he has generally heard the horse spoken of as a horse of sixteen hands high, six years old, of fine proportions, great beauty, unrivalled speed, &c., as the horse notices usually describe them? It is enough to ask these questions to show that the evidence is not competent, and the verdict must be set aside on account of its admission.

The testimony of the medical witness was competent; it comes within the case of *Haven* v. *Wendell*, 11 N. H. Rep. 112, a case which we regard as a leading case upon this part of the law of evidence.

The mortgage was made by Heath, the plaintiff, who was then a minor, and by Hall, who, if he had any title, had derived it from Heath.

In different counts, two takings are alleged at different times, and the evidence shows two distinct takings. After the first, the plaintiff retook the horse, and after the second, he commenced this action. At both these times he was a minor. Looking, then, at this transaction between these parties, without reference to the previous negotiations with Dennison, the questions arise,

Whether Heath could avoid his sale to Hall, and his mortgage to the defendant, West?

Whether he could do so before he became of full age himself?

Whether his act of regaining the horse, or bringing this suit for him, was sufficient to avoid the sale and mortgage?

It is clear that both the sale and the mortgage were voidable. *Roberts* v. *Wiggin*, 1 N. H. Rep. 73; 2 Kent's Com. 234; and "no one but the infant himself, or his legal representatives, can avoid his voidable deed or contract; for while living he ought to be the exclusive judge of the propriety of the exercise of a personal privilege intended for his benefit,

and when dead those alone should interfere who legally represent him. Deeds, writings and parol contracts may be avoided during infancy, or after he is of age, by his dissent, entry, suit or plea, as the case may require." 2 Kent's Com. 237; *Stafford* v. *Roof,* 9 Cow. 626; *Bool* v. *Mix,* 17 Wend. 119; *Shipman* v. *Horton,* 17 Conn. 481.

Any act clearly showing an intention not to be bound by a contract or conveyance, is sufficient to avoid it. Thus it is said by *Woodbury,* J., in *Roberts* v. *Wiggin,* before cited, " In general an infant to avoid his deed must reënter on the land and oust the occupant, or if already in possession, must perform some act explicitly evincing his intention to defeat the conveyance. Many acts might suffice for this purpose, as an express and formal notice to the other party, or if sued himself in ejectment, interposing minority as a defence against the deed, or making a subsequent grant of the same premises." And in the case of a chattel, if an infant sell a chattel and do not deliver it with his own hand, (and no such delivery is pretended in this case,) he may consider the contract as void, and the purchaser a trespasser, if he take it. Perk. § 14, *Dearborn* v. *Eastman,* 4 N. H. Rep. 441.

In *Stafford* v. *Roof* before cited, it was held, that a contract by an infant accompanied with delivery by his hand is voidable, not void, whether it be beneficial to him or not. But a manual delivery seems in such case to be essential. None was shown in this case. There being no proof of actual manual delivery, the contract would seem to be void. The agreement to sell conferred no right upon the vendee to take. The mere agreement of the infant would not protect the vendee against an action of trespass for taking the horse. The taking would be tortious, and in itself a conversion.

The principle is understood to be settled, that where an infant purchases property either real or personal, and at the same time and as part of the same transaction, executes a mortgage of the same property to the seller, to secure a part

or all of the purchase money, he cannot avoid the mortgage, without at the same time avoiding the entire contract, including the original purchase, the effect of which is to revest the title in the seller, as it was at first. *Roberts* v. *Wiggin*, 1 N. H. Rep. 73.

It remains then to be seen, whether the position of these parties is such, that the defendant, West, can avail himself of this principle. Heath purchased the horse of Dennison, and executed a mortgage to him to secure a part of the purchase money. Had the controversy arisen between Heath and Dennison, the case would be clear. If Dennison had in terms assigned his mortgage to West, the case would have been equally clear between Heath and West. The transaction was not, in form, an assignment of the mortgage, and the question is, whether, consistently with recognized legal principles, it can be regarded as so far in substance an assignment as to give West the benefit of this very just and reasonable principle.

Dennison failed to get his pay, and called on Heath, either to pay the money or give up the horse. There was talk between Heath and Hall, as to Hall's paying for and owning one half of the horse, and it was agreed that Hall should sign a note for $75 to raise money to pay Dennison, and should keep the horse till spring, and then pay for and own half of him, if he elected to do so. Before this, Dennison had seen West, and told Heath and Hall that West would advance the money on their note and a mortgage of the horse. Dennison offered to assign his mortgage to West, but West said he did not want an assignment, he wanted a new mortgage. Heath and Hall made their note and mortgage to West, and Dennison destroyed the note he held, and cancelled his mortgage and delivered it to West. The destruction of the note and cancelling the mortgage were equivalent to a discharge of the mortgage, and nothing more. The case does not find whether West paid the money to Dennison or to Heath, the witnesses disagreeing in their

statements on that point.   It is not  perhaps  very  material.
The transaction may well enough be  regarded  in the same
light, if the fact was either way ;  the  substance of it being,
that West advanced the money to pay the balance of Den-
nison's mortgage, upon receiving  the same kind of security
upon the same property.

The  principles  laid  down  in  the  case  of  *Robinson*  v.
*Leavitt*, 7 N. H. Rep. 99, to which we are referred, are thus
stated by *Parker*, J.   " There  are  cases  in  which  a party,
who has paid money due  upon a  mortgage,  is entitled, for
the purpose of effecting substantial justice, to be substituted
in  the  place of  the  incumbrancer, and  treated  as  the  as-
signee of the mortgage, and is enabled  to hold  the land  as
if assignee, notwithstanding  the  mortgage  itself  has  been
cancelled, and the debt discharged.   The  true  principle is,
that where  money due on a mortgage is paid,  it  shall ope-
rate as a discharge of the mortgage, or in  the  nature  of  an
assignment of it, substituting him  who pays in the  place of
the mortgagee, as  may  best  serve  the  purposes of justice,
and the just intent of the parties.

Many cases state the rule in equity to be, that the incum-
brance shall be kept on foot, or considered  extinguished,  or
merged, according to the intent  or  the  interest  of the party
paying the money ; but the  decisions  themselves  will  gen-
erally be found in accordance with the principle above stated.

It makes no difference  in  either  of  these  cases,  whether
the party on the payment took an  assignment of the mort-
gage, or  a  release,  or whether a discharge was  made  and
the evidence of the debt cancelled.   The debt itself may be
held still to subsist, in him who paid the money as assignee,
so far as it ought to subsist in the nature of a lien upon the
land, and the mortgage is considered in force for his benefit,
so far as he ought in justice to hold  the land  under it, if it
had actually  been assigned.   Justice has  been effected be-
tween parties in this mode  by overlooking the form of the
transaction."

Heath *v.* West.

These principles are cited and approved in *Rigney* v. *Lovejoy*, 13 N. H. Rep. 252.

Assuming these principles to be correct, it seems apparent that the debt to Dennison was substantially paid by West, and that substantial justice will be promoted by regarding West as substituted in Dennison's place, and treating him as assignee of Dennison's mortgage. The object of all parties was to give to West a valid security upon this horse, for the money he advanced to pay Dennison, and it is just to all parties to regard the Dennison mortgage as not discharged, but still subsisting for the benefit of West. It was clearly the interest of West to take an assignment of Dennison's mortgage, because that could not be avoided without also avoiding Dennison's sale. It was a case where the parties acted under a mistake, the obvious effect of what they did being to destroy a good and effectual security, and to give a writing in its stead, which was without any binding effect. The present, then, would seem to be a case, to which the principles of *Robinson* v. *Leavitt* should be applied; and we are accordingly of the opinion that West should be regarded as the assignee of Dennison's interest in this animal, and entitled to take and sell the creature by virtue of the mortgage, and if that is considered as avoided, then the sale to Heath being at the same time avoided, West had a right to take and dispose of the animal under Dennison's original title. On this point our views of the case differ from those of the court below.

*New trial granted.*