# Martin Cogley

### *vs.*

# Samuel W. Cushman.

The effect of certain admissions relating to a chattel mortgage and proceedings under it, made upon the trial by a plaintiff in a suit brought in behalf of an infant, upon the right of the plaintiff to show a disaffirmance of the mortgage, on the ground of the mortgagor's infancy, considered and determined.

In an action on behalf of an infant for the conversion of property, where the defense rested upon the fact that the property was taken under a chattel mortgage, and the plaintiff relied upon a disaffirmance of the contract by the infant, it is proper to ask the infant if he was the owner of the property at the time it was taken.

Where a sale of personal chattels was made by A., to B. and C. jointly, one of whom is an infant, and the vendees execute their notes and mortgage on the property sold, with other personal property to the vendor for part of the purchase money, it is one transaction, and as to the infant is voidable only; but may be avoided by him during his minority, and until rescinded the mortgage is valid, and all acts done under it in accordance with the terms of the contract are lawful; the disaffirmance of the mortgage in such case is a rescission of the sale, and the infant, if he would rescind the mortgage, must restore the property acquired by the sale.

Certain testimony to show a disaffirmance of the mortgage by the infant mortgagor, in such case, considered with reference to its sufficiency to sustain the verdict of a jury, and determined to be insufficient for such purpose.

When an instruction given by request of counsel is excepted to,

which may be unobjectionable if the jury were properly instructed upon other questions connected with that involved in the instruction given, it will be presumed that the jury were properly instructed upon such other questions, if there is nothing to show the contrary.

The plaintiff, a minor, by Michael Power his guardian *ad litem,* brought this action in the district court for Waseca county, for the wrongful taking and conversion by defendant of a span of horses, the property of the plaintiff. The complaint alleged the minority of the plaintiff, his ownership and possession of the horses, and the wrongful taking and conversion thereof by the defendant.

The answer admits the taking, and alleges among other things, that the property was taken under and by virtue of a chattel mortgage executed by the plaintiff and one Martin Fanning upon this, with other property, by the plaintiff, as agent of the mortgagee, upon a default in the payment of the money secured thereby, and that the property was sold and the proceeds applied on such mortgage.

The cause was tried before a jury who found a verdict for the plaintiff. The defendant made a motion for a new trial, which was denied, and judgment being entered upon the verdict, he appeals to this court. The evidence on the trial, and rulings and charge of the court below, so far as necessary to an understanding of the case, are stated in the opinion of the court.

B. S. LEWIS and AMOS COGSWELL for Appellant.

LEWIS BROWNELL for Respondent.

*By the Court*—McMILLAN, J.—The plaintiff, Martin Cogley, and one Martin J. Fanning, (the former being at the time a minor) jointly purchased of Patch & Fisk, agents of one Brayley, a threshing machine and horse power for the

sum of $700, of which sum they paid $100, and gave their joint notes for $600, to secure the payment of which, and as collateral security therefor, they executed to Brayley a chattel mortgage upon the threshing machine and horse power, a span of horses owned by Cogley, and a span of mares owned by Fanning. The property by the stipulations in the mortgage, was left in the possession of the mortgagors.

Default having been made in the payment of the first two notes secured by the mortgage, the defendant Cushman, as the agent of Brayley, the mortgagee, took from the possession of Cogley, and without his consent, the horses belonging to him, described in the mortgage, for the taking and conversion of which this action is brought, and delivered them to Patch, an agent of Brayley, who subsequently sold them under the power in the mortgage for such default, and applied the proceeds on the notes and mortgage, to which application there is no evidence the plaintiff assented.

Cogley, who is still a minor, by his guardian *ad litem*, brings this action for the wrongful taking and conversion of the property. The complaint alleges the minority of Cogley, his ownership and possession of the property, and the wrongful taking and conversion thereof by the defendant.

On the trial of the cause, before any evidence was offered, the plaintiff in open court admitted:

"*First*. That the chattel mortgage mentioned and described in the defendant's answer was executed and filed in due and legal form as required by law, and would have been valid except that the plaintiff was a minor at the time he executed the same:

"*Second*. That there had been a default, and still was a default in the payment of the notes mentioned in said mortgage at the time of the taking of the horses in controversy

by the defendant, and that the taking of the said horses by the defendant would have been legal if the plaintiff had been of age when he executed said mortgage:

"*Third.* That the defendant was the duly authorized agent of James Brayley, the mortgagee, in the taking of said horses, and that the defendant took said horses as such agent of said Brayley, and on account of the default of the defendant in the payment of the notes mentioned in said mortgage."

Thereupon the defendant moved the court to dismiss the action, for the reason that from the complaint and admissions, the plaintiff was not entitled to recover; which motion was denied. and the defendant excepted.

The first point made by the appellant that the court erred in refusing to dismiss the action, because, upon this state of facts, it appears that at the time the defendant took the horses, the plaintiff had not disaffirmed the mortgage contract; it was therefore valid; and by the default in the mortgage the title to the horses vested absolutely in Brayley, that, therefore, he took the horses rightfully; and before the action can be maintained, a demand and refusal are necessary, and no demand is alleged.

The defendant is mistaken in the assumption that it appears from the admissions, that at the time the defendant took the horses the plaintiff had not disaffirmed the contract. The only effect of the admissions are to estop the plaintiff from attacking the mortgage, and the defendant's taking under it. on any other ground than the infancy of the defendant at the time of executing the mortgage, and such other facts, connected with that disability to contract, as would be proper to show a wrongful taking and conversion of the property; of which a disaffirmance of the contract is one, and a demand and refusal may; under certain circum-

stances, be another.   The motion to dismiss, was, therefore, properly denied.

The second point urged by the appellant is that the court erred in allowing the plaintiff to testify that he owned the horses at the time they were taken.

The plaintiff was trying the case upon the theory that the mortgage was avoided ; and it was proper, in connection with evidence upon which the jury might find that fact, for the plaintiff to prove his ownership of the horses.   The evidence was properly admitted.

The remaining points may properly be disposed of together, by considering various questions involved in them. The sale of the machinery by Brayley to Cogley and Fanning, and the execution of the notes and mortgage by the latter for the balance of the purchase money, all transpired at the same time, and must be regarded as one transaction. *Heath vs. West*, 8 *Fos.* 101.   In this light the mortgage may, at least, be beneficial to Cogley, and is voidable only. 2 *Kent*, 234 ; *Whitney et al. vs. Dutch et al.*, 14 *Mass.* 457. *Reeves, Dom. Rel.* 250.   (*Parent and child, ch.* 4.)

There is some difference in the authorities as to whether an infant can rescind an executed contract before arriving at his majority, but the appellant raises no objection to the right of the plaintiff to rescind the contract in this case, on the ground of his minority, and if he did, we think, as there is no evidence of fraud in the transaction, and the contract affects only personal chattels, the right exists on his part to rescind the contract while within age.   2 *Kent*, 237 ; *Carr vs. Clough*, 6 *Foster* 280 ; *Stafford vs. Roof*, 9 *Cow.*; *Bool vs. Mix.* 17 *Wend.* 119.; *Whitmarsh vs. Hall*, 3 *Den.* 376. 626.; *Shipman vs. Horton* 17 *Conn.* 481.

The contract then being voidable merely, until rescinded

Cogley v. Cushman.

was valid, and all acts done under it, and in accordance with the terms of the contract, are lawful.

Default having been made in the conditions of the mortgage in this case, the taking of the property was authorized by the terms of the instrument, and unless the mortgage was rescinded by the plaintiff before the property was taken, such taking was lawful.

The rescission of the contract prior to the taking of the property being necessary to render the taking unlawful, and a verdict having been rendered for the plaintiff, it is presumed the jury found the fact of the rescission with the plaintiff; the question is then raised by the appellant's objection that the verdict was against the evidence, whether there was evidence of that fact sufficient to support the verdict. It does not appear to us that there was. It is true that a verdict will never be disturbed in this court if there be any evidence reasonably tending to sustain it; (12 *Minn.* 307) but in this case there does not seem to have been any such evidence before the jury.

The sale of the machinery and the execution of the mortgage constituted but one transaction, which must be rescinded in whole, if at all; plaintiff, therefore, could not rescind the mortgage without disaffirming the sale, and upon such disaffirmance the title to the machinery would revert to Brayley, and he would be entitled to its possession. *Heath vs. West,* 8 *Foster* 101.

Plaintiff could not avoid the mortgage and keep the machinery. *Carr vs. Clough,* 6 *Foster* 280; *Ottman vs. Monk,* 3 *Sandford Ch. R.* 431; *Badger vs. Phinney,* 15 *Mass.* 359, *Reeves Dom. Rel.,* 243-5; 2 *Kent,* 240.

The avoidance by an infant of a contract relating to personal property, may be by any act clearly demonstrating

a renunciation of the contract. 1 *Amer. Lea. Cas.*, 114; *Vent vs. Osgood*, 19 *Pick.* 572, 573.

The plaintiff testifies as follows: "The team was in the yard of J. Vaughan at the time it was taken. I had turned them loose a short time before. I had charge of the team. The defendant came there in the morning and asked if I had a team. I told him I had. He said he was going to take them. I said there was no cause for taking them. I did not consent to his taking the horses. He took the horses and started towards Waseca." This is all that plaintiff did or said prior to, or at the time of the taking.

His statement that he did not consent is no evidence to show that he made any objection to the taking.

Considering his remark, that there was no cause for taking the horses to be an act, in contemplation of law, it can not reasonably be said to have been an act which clearly demonstrated that the plaintiff renounced the contract he had made with Brayley, viz: that he repudiated his notes and mortgage; disclaimed all further ownership in the machinery, and assented to Brayley's resuming possession of it under his original title. The plaintiff further states, indeed, that "I saw the team next day. They were drawing the threshing machine. I had no conversation with defendant then. I don't know that he was there."

Although it appears from this that he did not then object to the taking of the machine; yet as the defendant is not shown to have been present, and as it is left uncertain upon the proof whether the machine was taken that day or the day before, and there is nothing to show that it was not, like the team, taken on the mortgage, it is not perceived how this fact, or the fact that it is not shown that the plaintiff has, at any time since, objected to Brayley's possession of the machine, is evidence to show that plaintiff disaffirmed the contract *before* Cushman took the horses

If defendant had been present when plaintiff met the team drawing the machinery, and plaintiff had then stated to him that having disaffirmed the contract before he took the team, he assented to Brayley's retaking the machinery, such declaration would plainly not have been evidence to prove such prior disaffirmance. If so, the silence of the plaintiff on the occasion referred to, which was on the day after the taking of the horses, would not be evidence for such purpose.

Indeed, the plaintiff has not put his case here on the ground of a disaffirmance before the taking, but that if any were necessary, which he denies, his bringing this action was a sufficient disaffirmance.

As we have said, however, defendant's taking was lawful, unless there was such previous disaffirmance, and as we think none is shown, and a demand and refusal is neither alleged nor proved, the evidence does not support the verdict.

As this disposes of the case, it is unnecessary to pass upon the further point made by the appellant, that the verdict is manifestly against the evidence, in that the latter clearly shows that in the use of the machine, the plaintiff had depreciated its value at least one-half.

It is proper, however, to advert to the circumstance that one of the instructions given at plaintiff's request, taken literally would have a tendency to mislead the jury, viz ; " that if the mortgage were not absolutely void, what acts are necessary to disaffirm the mortgage contract, is a question of fact for the jury to determine from the evidence, considering all the circumstances of the case."

The charge is not given in full, and is therefore presumed to have been full and correct on all other material points. We may, therefore, presume that the court instructed the jury that the mortgage was not absolutely void, and added the instruction above quoted in connection therewith, using

the word "if" in the sense of "although." Nevertheless the instruction, in its literal signification, might lead the jury to believe, that supposing the facts claimed to be a disaffirmance to be proved to their entire satisfaction, whether they were a disaffirmance, or not, was a question of fact for them to determine, unless they should understand the court by said instruction to state, that whether the acts necessary to constitute a disaffirmance of the contract had been proved, was a question of fact for the jury, which they would hardly do, unless some further instructions were given them, as to how such contract might be disaffirmed, and what in law would constitute a disaffirmance thereof.

The judgment appealed from is set aside; the order denying a new trial reversed, and a new trial ordered