GEORGE D. BETTS, Respondent, v. JAMES CARROLL, Appellant.

February 11, 1879.

1. An infant may, during his minority, repudiate his contracts respecting personal chattels. But if, when doing so, he still has in his possession and capable of restoration the consideration received by him for the obligation assumed, he must surrender it, and thus far place both parties in *statu quo*.

2. To maintain an action based upon his avoidance of his contract, an infant must give notice of his election to avoid.

3. The commencement of a suit by an infant for damages against the constable who levied upon the property as that of the infant's vendee cannot affect the *status* of the property at the date of the levy.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

T. A. & H. M. POST, for appellant: Betts contributed the press in controversy to the partnership. Thereafter he had no exclusive right to or interest in it as against his copartner. — *Church* v. *Knox*, 2 Conn. 514; *Lovejoy* v. *Bowers*, 11 N. H. 404. It was subject to levy for his copartner's debts. — *Wiles* v. *Maddox*, 26 Mo. 82; *Shudy* v. *Bank*, 62 Mo. 23. Betts could not repudiate his mortgage to Peterson without restoring to him his interest in the partnership stock, to secure payment for which the mortgage was given. — *Heath* v. *West*, 28 N. H. 108; *Cogley* v. *Cushman*, 16 Minn. 402; *Skinner* v. *Maxwell*, 66 N. C. 45; *Kitchen* v. *Lee*, 11 Paige Ch. 108. The effect of the repudiation of the mortgage was to place the parties in precisely the same position as though no sale had taken place, and the title to Peterson's interest purchased by Betts reverted back to Peterson by operation of law.— *Cogley* v. *Cushman*, 16 Minn. 402; *Skinner* v. *Maxwell*, 66 N. C. 47; *Heath* v. *West*, 28 N. H. 109.

JAY L. TORREY, with whom are HITCHCOCK, LUBKE & PLAYER, and ROEDER & RICHIE, for respondent: Betts's purchase from Peterson was an executory contract, which he has until after his majority to perform or repudiate.— *Corey* v. *Burton*, 32 Mich. 30; *Dunson* v. *Brown*, 31 Mich. 182. In bringing this action under the statute for the "claim and delivery of personal property," and in making the affidavit thereby required, he rescinds his purchase from Peterson, and his copartnership contract with him, and hence holds by his original title.— *Shipman* v. *Horton*, 17 Conn. 481; *Stafford* v. *Roof*, 9 Cow. 626; *Briggs* v. *McCabe*, 27 Ind. 327; *Carpenter* v. *Carpenter*, 45 Ind. 142.

LEWIS, P. J., delivered the opinion of the court.

This is a suit upon claim and delivery of personal property, commenced before a justice of the peace. The defendant recovered; and upon plaintiff's appeal to the Circuit

Court, the cause was heard upon an agreed statement of facts to the following effect : —

In April, 1875, George D. Betts, a minor, formed an equal copartnership with one Peterson in a certain printing business, for a term of one year from date, under the name of "Geo. D. Betts & Co." Betts contributed the good-will and contents of a small job-printing office, a part of which constitutes the subject of this controversy. Peterson contributed thereto a contract with the Theatre Comique to furnish it programmes for one year from date gratuitously, with the right to charge for the advertisements thereon. The firm continued in business till February, 1876, when Betts bought Peterson's interest, giving him for the purchase-money notes to the extent of $500 secured by chattel mortgage on the press here in dispute, which was a part of the stock contributed by Betts to the firm business. Said notes were indorsed for value before maturity, by Peterson, to the St. Louis Type Foundry, who then had notice of Betts's minority. After maturity of the notes, the Type Foundry sold the press under the mortgage, to satisfy the amount unpaid on the notes, and became itself the purchaser.

Prior to said sale, Betts gave written notice to all parties concerned that he repudiated the mortgage because of his minority.

After the sale, the Type Foundry, waiving its right under the purchase at the mortgage sale, sued Peterson on his indorsement, attached Peterson's interest in the firm, and levied on the press in controversy to satisfy the amount yet due, Peterson being a non-resident. The press levied on was a part of the partnership effects. The Type Foundry still owns the notes. This suit, prosecuted by the guardian *ad litem* of Betts, who is still a minor, is against the constable who levied the attachment. The Circuit Court, sitting as a jury, found for the plaintiff, with one cent damages. Defendant appealed.

An infant may, during his minority, repudiate his con-

tracts respecting personal chattels. But if, when doing so, he still has in his possession and capable of restoration the consideration received by him for the obligation assumed, he must surrender it, and thus far, at least, place both parties in *statu quo.* *Heath* v. *West,* 28 N. H. 108 ; *Cogley* v. *Cushman,* 16 Minn. 402 ; *Skinner* v. *Maxwell,* 66 N. C. 45 ; *Kitchen* v. *Lee,* 11 Paige Ch. 108. When Betts repudiated his chattel mortgage, the effect was a disaffirmance also of his purchase from Peterson, who was thus restored to ownership of one-half the partnership effects, including the press in controversy. The Circuit Court recognized this effect, but went a step further. It held that Betts, by claiming the property in replevin, had elected to avoid also his copartnership contract, which involved the original sale to Peterson ; and thus Betts became remitted to his first ownership, in which Peterson had no interest. The same position is here taken by counsel for the plaintiff, who cites in its support *Shipman* v. *Horton,* 17 Conn. 481 ; *Stafford* v. *Roof,* 9 Cow. 626 ; *Briggs* v. *McCabe,* 27 Ind. 327 ; and *Carpenter* v. *Carpenter,* 45 Ind. 142. Upon examination of these authorities, we do not find the proposition sustained by them. In each case there was a distinct act of avoidance, or something equivalent thereto, before the institution of the suit. In *Stafford* v. *Roof, supra,* it was considered by a majority of the court that there had been such a conversion of the property by the defendant as would dispense with the necessity for a disaffirmance and demand by the infant plaintiff before suit. Stebbins, senator, who was of opinion that there had been no such conversion, stated the general principle thus : "The sale was not void, but voidable by the infant ; and conceding, therefore, that he may avoid before coming of age, it is certainly good until avoided ; and the possession of the defendant must have been rightful until such avoidance. His offer to sell, then, can be no conversion. The first evidence or notice of his election to avoid the contract which the plaintiff seems

to have given, was the commencement of this suit. I think he should first have given notice of his election to avoid the contract, and demanded the horse, and waited for a refusal to deliver, as evidence of a conversion, before he commenced his prosecution." This language, it is true, appears in a dissenting opinion. But this leading proposition, as to the position and duty of the infant in the absence of any conversion by the other party, conflicts with nothing in the majority opinion, or in the conclusion reached by the court. The proposition seems to be just, and consistent with principle. The partnership contract, although voidable by Betts, has never been avoided. It is an executed contract; and all its benefits, of whatever nature, remain in the hands of Betts. It cannot be assumed that Betts will avoid it either before or after his coming of age. The *status* existing at the time of the levy must control the effect. By this *status*, Peterson, under a contract voidable but not yet avoided, was owner of a half-interest in the property attached. As to the value of the partnership contract to Betts, we are not in this proceeding called upon to estimate it for any purpose.

The judgment will be reversed and the cause remanded. All the judges concur.