By the Court,

Bronson, J.
Some of the questions made on the argument were disposed of when the will of Aert Middagh was before the court in the case of Jackson v. Luquere (5 Cowen, 221). The daughters, Margaretta and Magdalena, severally took life estates in the premises, with remainders to their respective children as tenants in common—the children [127] taking per stirpes, and not per capita. In other words, the children of each daughter, immediately on the death of their mother, were entitled to-an undivided half of the property. The partition made between Margaretta and Magdalena in 1793, was valid for their joint lives, but did not bind those who were entitled to the estates in remainder.
Magdalena died in 1825,'leaving one daughter, Mrs. Starnes, who took an undivided half of the property. Margaretta and her husband, George Moore, had four children, who were entitled to the other undivided half. These remainders were vested in interest, though they were not entitled to the possession of the property until after the termination of the life estate of their mother. On the death of the two sons Alexander and George, their two sisters, Mrs. Hunt and Mrs. Bool, took their interest in the estate as heir a at law (1 Laws of N. Y. Greenl. ed. 207, fourth rule of descents). They were then seized in remainder of an undivided half, or either of an undivided fourth of the property; and became entitled to the possession on the death of their mother in 1820.
The plaintiffs claim an interest in fee under the will, and contend that this question was decided in their favor in the case of Jackson v. Luquere. Mr. Justice Woodworth, who delivered the opinion of the court, remarked, that on the death of either of the daughters of the testator, her portion of the estate “ became vested in her children, as tenants in common in fee.” The question as to what quantity of interest the grand-children of the testator took, was not before the court; the judge was discussing a .different matter; and I have no doubt that the words “ in fee” found their way into the opinion without any intention of passing upon the inquiry whether the grand-children had an estate of inheritance, or for life only. It is impossible to read the will without perceiving that the question is of too grave a character to be disposed of in two words; and it should, I think, be regarded as still open for consideration. But it is unnecessary to decide on it on [128] the present occasion; and as it was only discussed by the counsel for one party, I forbear to express any opinion on the point.
The plaintiff, Sarah Bool, at the time she executed the conveyance to Frederick Mitchell in 1794, was a feme covert and an infant; and the principal questions in the case are, first, whether the deed was void, or only voidable; second, if voidable only, then whether it was necessary for her to do any act to avoid the conveyance before bringing this action; and third, whether the deed has been confirmed by any act or omission on her part since she attained the age of twenty-one years.
*75 Although the plaintiff was a feme covert, her husband united with her in the conveyance, and the deed was acknowledged before a master in chancery in the form prescribed by law. The act of 1788, which was in force at the time, is substantially like the present statute in relation to acknowledgments by femes covert (2 Laws of N. Y., Greenl. ed. 99, § 3). At the common law, a woman during coverture could not alien her lands by deed; but she might do so by uniting with her husband in levying a fine, or suffering a common recovery, she being examined by the judges in relation to her consent. In this, as well as in most of the other states, an acknowledgment by the wife, or a private examination before some public officer, that the deed was executed freely, and without any fear or compulsion of her husband, has taken the place of the common law modes of assurance by fine and recovery. Our statute does not in terms enable the wife to alien in this manner, nor does it declare her conveyance valid. Negative words only are used. The acknowledgment of a married woman shall not be taken, except in a particular manner, nor shall her estate pass by a conveyance not so acknowledged (1 R. S. 758, § 10). Upon the ordinary rules of construction this would not be deemed an enabling, but a restraining statute. It seems to have been assumed that we had not adopted the common law rule, and that the deed of a feme covert was effectual to pass her interest in lands.
A recurrence to the early colonial laws will shed some light on the peculiar phraseology of the statute. The fourth section of the act of [129] October 30, 1710, provided that all deeds and conveyances, being duly acknowledged and recorded, or the transcript thereof, should be good evidence to all intents and purposes, as if the original were produced and proved in court (3 R. S. App. 5). Nothing was said about acknowledgments by married women. From the act of February 16, 1771 (3 R. S. App. 22), it seems that their acknowledgments have been taken in the same form as though they had been femes sole, and that a doubt had arisen whether such conveyances were valid. This act, after reciting that it had been an ancient practice in the colony to record deeds and conveyances upon the previous acknowledgment of the grantors, confirmed conveyances already made, notwithstanding any pretence that the wife had not been privately examined. “ But for the more solemn conveying and recording of real estates for the future,” it was enacted, that “ no estate of & feme covert shall henceforth pass by her deed, without a previous acknowledgment made by her apart from her husband,” and a certificate was to be made by the officer “ that she had been privately examined, and confessed that she executed the same freely without any fear or compulsion of her husband.” Nearly the same language has been used in all the subsequent laws on the subject. Whether the common law rule in relation to alienations by married woman was ever adopted in this state (15 Johns. R. 109), or if adopted, by what means it was subsequently modified, is not very material to the present inquiry7. The act of 1771, assumed that femes covert might alien by deed, and it prescribed the manner in which their acknowledgments should be taken for the future., There can be no doubt that the deed of the plaintiff, having been duly acknowledged, was as effectual to convey her interest as though she had been a feme sole. Having complied with the requisitions of the statute, the disability resulting from coverture was completely obviated. There was no incapacity to alien her lands in that form.
The infancy of the plaintiff presents a distinct question from that of her coverture. Each disability must be considered by itself, neither can derive any additional force from being coupled with the other (Phillips v. Green, 3 Marsh, Ky. R. 7, and 5 Monroe, 350). The case of Sanford v. McLean (3 Paige, 117), only decides, that the disability arising from infancy remains, although the infant, being also a feme covert, acknowledged the deed in the *76 form prescribed by law. To that doctrine I fully assent. The question then is, whether the deed of an infant be absolutely void, or only voidable. If an infant convey his lands by feoffment with livery of seizin, it has never been doubted that the estate passes. The de'.d is not a nullity, although it may be avoided by the grantor after he attains the age of twenty-one years. The deed executed by the plaintiff was a bargain and sale, and it is insisted that such a conveyance by an infant is utterly void. Perkins says (§ 12), “ All such gifts, grants or deeds made by infants, which do not take effect by delivery of his hand, are void; but all gifts, grants, or deeds made by infants, by matter in deed or in writing, which do take effect by delivery of his hand, are voidable, by himself, by his heirs, and by those who have his estate.” There has been much discussion in the books on the question whether delivery by the infant relates to the deed or conveyance, or to the possession of the land or thing sold. In Zouch v. Parsons (3 Burr. 1794), it was held that a conveyance by lease and release executed by an infant without livery of seizin, was voidable only, not void. Lord Mansfield cites Bro. Abr. to prove that the delivery of a deed can not be void, but only voidable; and he adds, there is no difference in this respect between a feoffment and deeds which convey an interest; the reason is the same. The conveyance by lease and release, as well as that by bargain and sale, derives its operation from the statute of uses. The deed raises a use, to which the statute immediately transfers the possession, or legal seizin of the land. Corporeal investiture is not necessary to the perfection of the title.
In Jackson v. Burchin (14 Johns. R. 124), a doubt was suggested whether a deed of bargain and sale by an infant, was not absolutely void; but the decision turned on another question. The case of Zouch v. Parsons, though it has been questioned in England, has never been overruled; and [131] the principle of that decision has been often recognized in this and other states. In Conroe v. Birdsall (1 Johns. Cas. 127), it was held that the bond of an infant, as well as other deeds which take effect by delivery of his hand, was only voidable—not absolutely void. In Jackson v. Todd (6 Johns. R. 257), Dunbar, under whom the lessor claimed, was an infant at the time he conveyed, and although the fact is not expressly stated, there can be no doubt that the conveyance was by deed of bargain and sale. It was held that the deed was only voidable, and that the defendant did not stand in such á relation to the title that he could avoid it. In Jackson v. Carpenter (11 Johns. R. 539), the infant had conveyed by deed of bargain and sale, and the judgment proceeds on the ground that the deed was only voidable. In Roof v. Stafford (7 Cowen, 178), Woodworth, J., who delivered the opinion of the court, said he considered it now well settled, that the contracts of an infant, not only such as take effect by his actual delivery of the subject matter (as a feoffment with livery, or a sale and manual delivery of goods), but all his.deeds, whether at the common law, or under the statute of uses; whether relating to real or personal property, are voidable merely, not void. This doctrine was admitted by Chancellor Jones, and denied by no one, when the case was before the court for the corrections of errors (9 Cowen, 626). The rule seems to be universal, that all deeds or instruments under seal, executed by an infant, are voidable only, with the single exception of those which delegate a naked authority; which are void. And even in relation to a power of attorney, Parker, Ch. J., considered it a point of strict law, somewhat incongruous with the general rules affecting the con tracts of infants, and that no satisfactory reason could be at signed for the exception (Whitney v. Dutch, 14 Mass. R. 462, 3). That a deed of bargain and sale executed by an infant is not void, see also Roberts v. Wiggins, 1 N. Hamp. R. 73; Kline v. Beebe, 6 Conn. R. 494; Hubbard v. Cummings, 1 Greenl. 11; Boston Bank Chamberlain, 15 Mass. R. 220; Phillips v. Green. *77 3 Marsh, Ky. R. 7, 5 Monroe, 350; Newl. Ch. Cont. 11; 2 Pothier, 26). Chancellor Kent, says, the doctrine of Zouch v. Parsons, has been recognized, as law in this county, and it is not now to be shaken (2 Kent, 236). I entertain no doubt that the deed was voidable only, and not void.
Was it necessary for the plaintiff to do any act to avoid the deed before bringing this action? The general rule is, that the voidable act of an infant, if it be by matter of record must be avoided by some matter of record, as by writ of error, or audita querela, and these must be prosecuted during his minority, that the infancy may be tried by inspection; but the act in puis of an infant may be avoided by some other act in pais of equal solemnity or notoriety. If there be a feoffment with livery, it may be avoided by entry, which is an act of equal notoriety. It may also be avoided by writ of dum fuit infra oetatem. The deed of an infant can not be avoided until he becomes of age, though he may enter and take the profits in the meantime. But it seems that a sale and manual delivery of chattels by an infant may be avoided while under age (Bac. Ab. Infancy and, Age, I; Com. Dig. Enfant, c. 4, 5, 9; F. N. B. 192; Roof v. Stafford, 7 Cowen, 179; 9 id. 626). Some of the old books say that an infant may avoid his deed by entry before he becomes of age; but that is not the doctrine of the present day. He may enter while within age and take the profits until the time arrives when he has a legal capacity to affirm or disaffirm the deed; but the deed is not rendered utterly void by the entry; it may still be confirmed after he arrives at full age.
The de.d of an infant may sometimes be avoided by plea, but the infancy must be specially pleaded, and can not be given in evidence under non est factum, because it is his deed until it has been avoided (3 Burr. 1805: Bac. Ab. Infancy and Age, 1. pl. 7). The remedy by plea is only applicable in the case of executory contracts, or where the question is presented in such a form that an opportunity to plead the infancy is presented. Where the contract is completely executed, as in the case of a conveyance of real estate, or a sale and manual delivery of chattels an opportunity to plead the infancy can seldom arise, and the deed must be avoided in some other [133] way (Inhab. of Worcester v. Eaton. 13 Mass. R. 375).
A deed of bargain and sale executed by an infant may, under certain circumstances, be avoided by another deed of bargain and sale to a third person after he becomes of age—that being an act of the same description and of equal notoriety with the original conveyance (Jackson v. Carpenter, 11 Johns. R. 539; Jackson v. Burchin, 14 id. 124; Tucker v. Moreland, 10 Peters, 58). It was said in Jackson v. Carpenter, that the conveyance of the infant was not attended with all the solemnities of a feoffment and livery, and that it might be defeated by an act of the same description and of equal notoriety. In holding that an entry was not necessary to avoid the deed, stress was laid on the fact that the land was vacant and uncultivated, and an entry would have been useless. In Jurkson v. Burchin, the land was also vacant at the time the second deed was executed, and the court say the law does not require idle and non-essential ceremonies; and it would be idle to require an entry on the premises in 1795, when not only this lot but the whole country in which it was situated was almost a wilderness. In Tucker v. Moreland, the infant had never been out of possession. If in these cases the land had been held adversely to the infant, the second deed would, I think, have been void, and could not have amounted to a revocation of the first conveyance. This was admitted in Jackson v. Burchin. See also 13 Mass. R. 375.
Deeds procured by duress, or executed by persons of unsound mind, stand on nearly the same footing as the deeds of infants. In Thompson v. Leach (Carthew, 435), the court say, there is a difference between a feoffment made propriis manibus of an idiot, and the bare execution of a deed by sealing and delivery thereof, as in cases of surrenders, grants, releases, &c., which have *78 their strength only by executing them, and in which the formality of livery and seizin is not so much regarded in the law and therefore the feoifment is not merely void, but voidable; but surrenders, grants, &c., by an [134] idiot, are void ab initio. This case is also reported in 2 Salk. 427; Comyn. 45, and 1 Ld. Raym. 313. The doctrine that any deed of an infant or person non compos mentis is absolutely void, can not now be maintained. The case of Conroe v. Birdsall, decides that the penal bond of an infant is only voidable, and in such a case there can be no semblance of benefit to the infant apparent on the face of the deed. The case of Thompson v. Leach takes the distinction which will be found in many of the old books, between deeds accompanied with livery, and those which are not followed by any such solemnity—holding the one voidable and the other void. But that is not the doctrine of the present day. It has been fully settled in this country, as we have already seen, that those deeds and conveyances by infants, which derive their operation from the statute of uses, are no less valid than conveyances by feoifment with livery. They vest the title and estate in the grantee; and if he enter under the deed, he has both the legal and actual seizin of the land, which can only be defeating by avoiding the conveyance. If a deed of bargain and sale by an infant stand on the same footing in this respect as a feoifment with livery, I can perceive no possible reason why the infant should not be required to avoid the deed by some act of the same nature and of equal notoriety that would be necessary in the case of a feoifment. In the case under consideration, the land is held under the infant’s deed—the actual and legal seizin have been united. It is a lawful seizin, and I think the tenant can not be regarded as a trespasser and turned out of possession so long as the deed remains in force.
There is only one case in which an infant can avoid a feoffment with livery by action; that is by writ of dum fuit infra cetatam, which sets forth the fact of infancy', and seeks to avoid the deed on that ground (F. N. B. 192). In all other cases he must make an actual entry on the land, for the express purpose of disaffirming the deed. There is also a writ of entry for á person who has conveyed when of unsound mind, called, from the recital in it, dum fuit non compos mentis (F. N. B. 202). This, like the writ of entry by an infant, was devised for the express purpose of enabling [135] the party to avoid the deed by an appropriate action. The cases in this court which have held that no entry was necessary, are put upon the ground that the land was vacant, and that an entry would have been an idle ceremony. But it it otherwise in this case. An entry here, for the purpose of avoiding the deed, -was but an act of justice to the tenant, before treating him as a trespasser and subjecting him to costs and mesne profits.
In The Inhabitants of Worcester v. Eaton (13 Mass. R. 375), the first deed had been obtained by duress. From the report of the same case in 11 Mass. R. 368, it will be seen that the grantor afterwards entered upon the premises, claiming and declaring that she entered for the purpose of possessing herself of the land, and enabling herself to make a conveyance; and a second deed was executed while she was on the land. Chief Justice Parker likens it to the deed of an infant, and he says, that until the deed is avoided, no subsequent conveyance by the grantor can be good; the title will remain good to the grantee, by virtue of such deed, until the grantor shall lawfully disaffirm it. He can do it only by entry; but having entered, his subsequent deed, accompanied by proof of facts tending to avoid the first, will convey a title. It was added, that the deed of the tenant (the one obtained by duress) being wholly avoided, he must be considered a disseizor. In Roberts v. Wiggins (1 New Hump. R. 73), it was said, that in general an infant, to avoid his deed, must re-enter on the land and oust the occupant; or, if already in possession, *79 must perform some act explicitly evincing liis intention to defeat the con veyance.
It is unnecessary, on the present occasion, to say that an entry on the land was the only mode in which the deed could be avoided, for the plaintiff, previous to bringing the action, had done no act whatever to disaffirm the conveyance. She had not even demanded possession of the land, or given notice to the tenant that she did not intend to be bound by the deed.
If one who has aiienéd his estate while an infant wishes afterwards to avoid the conveyance, it is imposing no unreasonable burden to require that it shall be done by an entry on the land, or by some other act of equal notoriety; and the avoidance, whatever maybe its form, must precede [136] the bringing of an action to recover possession. Justice to the tenant requires it; and there is no other way in which we can carry out the doctrine that the deed of an infant is voidable only, and not void. Although the title of the tenant may be defeated, yet, so long as the deed remains unrevoked, he has the legal seizin of the land, and can not be used as a trespasser. It is little better than a contradiction in terms, to say that a man who has the rightful possession of lands can he treated as a wrong-doer. In the case under consideration, the deed remained in full force at the time the action was brought; the possession of the defendant was not tortious, and the action of ejectment can not be maintained.
The opinion already expressed renders it unnecessary to inquire whether the deed has been confirmed by any act or omission on the part of the plaintiff since she became of age.
New trial denied.