Hoffman, J.
—The rule laid down by Lord Eldon, in Milner v. Harewood (18 Vesey, 275), was not an express decision, but has been often since treated as the law of England. It was, that an infant was not bound by an ante-nuptial covenant to settle her real 'estate; but if she, during coverture, sought to annul it, her husband, if a party to it, could not be allowed to aid in such annulment; and without his concurrence, her act during coverture, would be ineffectual.
Clough v. Clough, (stated in 5th Vesey, 717), is an express decision of Lord Thublow, that an infant could not be bound by articles entered into, during her minority, as to her real estate. The children provided for in the settlement, had filed a bill to enforce it after the husband’s death.
Simpson v. Jones (2 Russ. and Mylne, 377), is a case constantly referred to. Sir John Leach, stated the rule very explicitly that the real estate of a female infant was not bound by a settlement on her marriage, because it does not become the absolute property of the husband, though he takes a limited interest in it. But the general personal estate was bound, because it would otherwise become his, and in truth it is his settlement, not hers. She could not give the trustees power to make sale during her infancy. But a good title could be made by her confirmation, when she attained twenty-one. The subject was leasehold settled to her separate use.
The following later English cases bear also upon the question: *325 In Re Waring (12 Eng. L. and Eq. R., 351); Cava v. Cave, (19 id., 280); Field v. Moore, (35 id., 498,) and In Re Dalton, (39 id., 145). An act of Parliament, of the 18, 19 Vict., cap. 43, also deserves notice. The rule of these cases may be stated in the language of Lord Justice Turner, in Field v. Moore, “no valid settlement of a female infant’s real estate can be made upon her marriage, by virtue of any agreement on her part, or on the part of parents or guardians, or by the authority of the Court of Chancery.” The questions arose after the wife’s death.
The act of Parliament referred to provides, “that it shall be lawful for every infant, with the approbation of the Court of Chancery, to make a valid and binding settlement, or contract for settlement, in contemplation of marriage, of real or personal estate.”
The case of Cave v. Cave deserves more particular attention. The suit was instituted by a married woman against her husband, the trustees in a settlement after marriage, and the children. She had been a ward of the Court, and married without its approval. Articles were executed prior to the marriage, she being an infant. After the marriage further articles were executed, she still being an infant. These were in 1839; and in 1850 a settlement was made executed by both, and acknowledged by the wife. The object of the suit was to obtain the sanction of the Court for the amendment of the two articles of 1839, and the confirmation of the settlement of 1850. It was held that the Court possessed the same power over the parties, notwithstanding the lapse of time, which it would have possessed had the marriage been recent, and which it possesses in every case of a marriage of its ward without its sanction, subject nevertheless to the due protection of the rights and interests of persons who have come in esse since that period. It was referred to a master to ascertain whether the settlement of 1850 was a proper one, or whether it ought to be received. The general doctrine was recognized that the deed of an infant female before marriage did not bind her. I cannot find in this case the doctrine of an obligation upon the Court to rescind articles.
In our own state I find very little of authority upon the subject, Temple v. Hawley, (1 Sand. Ch’y R., 153,) and Strong v. Wilkin, (1 Barb. Ch’y R., 11,) are of importance.
*326 In the former case, the point determined was the invalidity of a deed of settlement executed not by the infant but by a special guardian appointed to approve of the marriage and settlement, and to join in it. The Assistant Vice-Chancellor examines the cases with care. He concludes that a settlement made by a female infant on the eve of marriage, will not bind her. She may disaffirm it, but when she may do so he leaves a doubtful question. After coverture she may do it of course, if she has not affirmed it in the interim. And it can be affirmed by her during coverture, after she becomes of age, with the assent of the husband. He shows that Chancellor Walworth sanctioned this point in his order of June 4th, 1839.
He also considers that the preponderance of authority was, that the wife could not disaffirm the contract during coverture.
In Strong v. Wilkin, (1 Barb. Ch'y R., 11,) the settlement before marriage was of personal property alone. There was in the instrument what was considered a power to make a will. After the marriage, and after the wife had arrived at full age, one of the trustees died, and she-iexecuted an instrument, with her husband, appointing a trustee in his place. She then made a will and died, leaving the husband and several children. The object of the suit was to establish the will, by which a life interest was given to the husband, and then upon his death divided the property equally among her children.
If the ante-nuptial settlement was bad, the will of course was void, and the husband took the whole under the statute of distributions. Thus the main point was the validity of that settlement. The Chancellor recognized the authority of Simpson v. Jones, (2 Russ, and Mylne, 376,) that a female infant is bound by a settlement, made on her marriage, of personal estate, because such personal estate becomes the property of the husband, and it is in truth his settlement, not hers. Having disposed of the other question, viz.: That the woman could make a will under the power, he sustained the will.
As a decision, the case amounts to this: An ante-nuptial settlement of personal estate by an infant is valid, so far at least, as that she may affirm it, and without affirmance that it shall be effectual to sustain what she does under it when of age. I think *327 it is to be deduced that in the judgment of Chancellor WAL-WORTH, she could not disaffirm it even when of age.
In the great case of McCartee v. Teller, (2 Paige, 550; 8 Wend., 290,) it was determined, that an equitable jointure, or a competent and certain provision for the wife in lieu of dower, if assented to by the father or guardian of the infant before marriage, is an equitable bar of dower. The Chancellor appears to consider that a strictly legal jointure under the statute in force in 1817, was a legal bar, without such knowledge or assent, unless some circumstances of fraud attended it.
The Revised Statutes of 1830 (1 R. S., 741, §§ 9, 10,) regulated this subject by providing, that to constitute a valid bar of dower, the provision by way of jointure must be expressly assented to in writing, by the woman if an adult, and both by her and her father or guardian, if she is an infant. And if an infant, her assent is to be evidenced by her joining in the conveyance with her father or guardian.
This appears to be a qualification of the provision in another part of the Revised Statutes, excepting infants and idiots from the power of aliening lands recognized to exist in all other persons capable of holding them. (1 R. S., 719, § 10.)
Again, we find in our state this rule fully established, that every conveyance of real estate made by an infant is voidable only. It is not void. The grantee has a legal estate and right, until something is done sufficient to disaffirm and annul it. (Bool v. Mix, 17 Wend., 130; Eagle Co. v. Lent, 6 Paige, 635; Dominick v. Michael, 4 Sand. S. C. R., 416.)
It appears also to be settled that the deed of an infant cannot be effectually avoided until he come of age, whatever right he may possess to the pernancy of the profits. (Bool v. Mix, ubi supra, Tucker v. Morland, 10 Peters, 73; Roof v. Stafford, 7 Cow., 183.)
But when of age, his power to do so is incontestable.
As to what will amount to a disaffirmance, this at least is clear, that a conveyance of the same property to another after arriving at age, and accompanied with an entry, will have that effect. (10 Peters, 73, and the cases in this state there cited; Dominick v. Michael, 4 Sand., 421; 17 Wend., 119.)
One other rule of our law should be noticed. A married *328 woman of full age may execute a deed of her lands without the concurrence of her husband, without his union in the conveyance. She is only required properly to acknowledge it. (Albany Fire Insurance Co. v. Bay, 4 Comst., 9.)
The statutes of 1848 and 1849 operated to exempt the personal property of the plaintiff as well as the rents of the real estate from the disposal or debts of her husband; to constitute both, as well as the real estate itself, her sole and separate property, as if she were a single female. (Act 1848, § 1.) The act of 1849 (§1) gives full power to convey and devise any real and personal estate held by her. I understand this power to be unlimited, not confined to the property acquired during marriage, referred to in the preceding clause of the section.
But the fourth section of the act of 1848, and the third section of that of 1849, contain this provision: “All contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place.” Unless this refers to contracts by infants, is it not wholly useless ?
This raises the important question, are infants not included in this provision by reason of their common law disability, or the statutory exception in our Revised Statutes, before referred to ? or does this provision render valid and effectual all contracts and conveyances of this peculiar character, viz., those made in consideration of marriage? I cannot but consider the phrase contracts to comprise conveyances.
And we are brought back in this aspect of the question to the great case of Drury v. Drury, and Chief Justice Wilmot’s opinion in it. (5 Brown’s P. C., 570; Wilmot’s Opinions, 177.) I may first observe that Chancellor Walworth speaks of it “as having exhausted the whole store of ancient learning in respect to the rights and liabilities of infants.” (2 Paige, 558.)
Again, this decision is recognized in the opinions of all the Judges, Vice-Chancellor Edwards, the Chancellor, and Justice Nelson (in McCartee v. Teller), ut supra. Nor does the actual determination in the Court below, or in the Court of Errors, in the least degree affect it, or any of the propositions established in it. The provision was not a strict legal jointure, within the acts, and was so unjust and inequitable, as that it ought not to be deemed an equitable jointure, and so a bar.
*329 Our own statute (1 R. L., 58, §§ 8, 9, 1813 ) then in force was a transcript of that of 27 Henry VIII, ch. 10. (8 Wend., 275.) And Justice Nelson says: “I lay out of the case the question whether an infant is bound by an ante-nuptial contract within the act concerning jointures. The argument of the Chancellor and the authorities relied upon seem to be entirely conclusive, that equally with adults they are bound by the statute.”
Now, a large portion of the celebrated argument of Chief Justice Wilmot was to show that within the general words in the statute of Henry VIH (“every woman married, having such jointure made or hereafter tobe made”), infants were comprised as well as adults. Stowell v. Zouch, in Plowden’s Commentaries, 553, is cited as an express authority to this point. He adverts to cases where the law implies an exception of infants out of general words, and says: “The only rule to be drawn from them is this, that when the words of a law in their common and ordinary signification are sufficient to include infants, the virtual exception must be drawn from the intention of the legislature manifested by other parts of the law, from the general purpose and design of the law; and from the subject matter of it.”
Still, it must be noticed, that the Chief Justice lays much stress upon the difference between the engagement of an infant binding her own estate, and the interest derived from the property of another person. AndLord Mansfield said: “I approve of the distinction taken by Mr. Justice Wilmot between infants contracting for conveying away something of their own, and where for barring themselves of a right which is a third person’s.” (2 Eden, 73.)
The language of our own act perhaps meets this distinction. Every marriage contract is included in its terms, and no distinction is made as to the source of the property. The general line of reasoning of the Chief Justice as to the inclusion of infants in general words, remains unaffected.
I conclude that by the true interpretation of the statutes, infants are comprehended, and their marriage contracts duly made, remain in as full force after marriage as if they had been adult.
But again, the marriage contract of a female adult, fairly and justly made, would certainly bind her, without any saving *330 words. It would operate as a restriction upon her unlimited control of her estate, and in practice as to saving her from her husband and his debts, and securing a provision for the issue, is fully as important now as it was before the statutes. There seems in this strong ground for supposing that the clause referred to was, essentially, to preserve the marriage contracts of infants.
The subject has received much investigation in some of the other states.
In Maryland, the case of Leveridge v. Haight, (2 Md. Ch. Decisions, 81) determined these points. That the doctrine of Drury v. Drury, of a jointure settled on a female infant barring her dower, it might be admitted was the law of Maryland; that with such exception, the marriage settlement of an infant female could not bind her; that it could be disaffirmed by her, when her disability was removed; and that as she had in that case died in her nonage, when she could not have disaffirmed it, no one claiming under her could do so. »
The question whether she could have disaffirmed it, after coming of age, but while still covert, did not distinctly arise.
In Pennsylvania, we have the cases of Shaw v. Boyd (5 Serg. and Rawle, 312), and of Wilson v. McCullough (7 Harris,. 77). In the former, a bond of a female infant, given upon her marriage, conditioned to release her dower upon receiving $500 from the executors of the intended husband was held inoperative. The Court (Ch. J. Gibson) say, that a naked contract to bind real estate was insufficient, except perhaps in favor of the issue where they are purchasers. She might, at the death of the husband, if then of age, confirm or avoid the engagement at her pleasure.”
In Wilson v. McCullough, marriage articles were entered into between the intended husband, and the infant, with the assent of her guardian. He made certain covenants as to her property. Subsequently to the marriage, and after the wife had arrived at age, she and her husband executed a mortgage to secure his debt. This was held inoperative, the mortgagee having notice of the settlement. The husband was prevented from interfering by his contract, and the wife because of her coverture. “ He cannot join his wife in aliening or incumbering the estate, and as she *331 cannot do so without him, therefore the settlement is necessarily operative during his life, not by her contract but by reason of her marital and his contract disability.
The Court add, that they decide nothing as to whether a female infant may bind her real estate in such a way.
McPherson on Infants, 522, and McQueen’s Husband and Wife, 252, are quoted with approbation, and these authors state the rule precisely upon the principle recognized by the Court of Pennsylvania.
The decisions in Virginia deserve much attention. The institutions of its society, as well as the ability of its tribunals, prescribe this.
In Tubb v. Archer (3 Hen. & Mumf., 399,) thes.e points were ruled:
First. Marriage articles are not to be rescinded after the marriage, even by consent of the husband and wife, or by any conveyance which they or either of them can make.
Second. The children born of the marriage are purchasers under both father and mother, by virtue of marriage articles.
Third. The husband’s rights as a purchaser for valuable consideration, by the marriage, are not surrendered, except so far as the articles, by a just construction, limit them.
Fourth. The rights of the wife stand upon the same footing precisely.
Fifth. Infants may contract by marriage articles or settlements, and such contracts will bind them when of fall age.
In Leigh v. Stewart (2 Leigh’s Rep., 76,) the husband and wife united in a settlement before marriage, when she was an infant. They joined in a bill to set it aside, and it cannot be doubted that this was after she became of age. In the Court below, she was privately examined as to her consent to the bill, and agreed to its being filed. It was held that the bill could not be sustained; that so far from the Court assisting the husband to frustrate the settlement, it ought to prevent him from attempting to defeat it. If he could not be allowed to do so, she could not do it without him.
In Healy v. Rowen, (5 Grattan, 414,) the Court of Appeals of that state held, that the assent of a guardian of an infant female to marriage articles was totally inoperative, and it was not confirmed by a subsequent deed, (even if that deed was executed *332 after she had arrived at age,) for want of a proper acknowledgment under the statute. But the Court took occasion expressly to reaffirm the doctrine of Tvbb v. Archer. Baldwin, J., delivering the opinion says:
“ The Court perceive nothing to disapprove in the case of Tvbb v. Archer. The essential principle of that case is understood to be, that marriage articles made between an infant femme and her intended husband, beneficial to her and her contemplated issue, are obligatory upon the parties, and will be enforced in a court of equity by a settlement in conformity therewith, on the application of the issue of the marriage. Such a contract is distinguishable from other contracts, voidable on the election of the infant party. The distinction is believed to be wise and salutary.”
In these cases the line of reasoning of Lord Hardwicks, in Harvey v. Ashley, is adopted and carried out. (Stated at length in note to 8 Wend., 331.) “ Marriage agreements differ from all
others. The principal contract is the marriage; and an infant female may contract at the age of twelve. All other parts of the contract are collateral incidents. As soon as the marriage takes place, the principal contract is executed, and cannot be set aside or rescinded; the state and the capacities of the parties are changed, and children born or to be born are purchasers under it; purchasers both under the father and mother.”
The results of my examination of this important case, may be stated in the following propositions:
The questions are to be considered, first, independently of the provisions of our statutes of 1848 and 1849; next as influenced by those provisions.
First. The question is not, whether in a Court of law, a deed for a valuable consideration, executed and duly acknowledged, by the plaintiff and her husband, accompanied with an entry, would supersede the settlement, and pass a valid title to the grantee. The question is, whether a Court, acting as a Court of equity, will, upon her application, while still covert, and after the birth of issue provided for in the settlement, and when such settlement is a just and fair one, lend its aid to annul and cancel it.
1. There is much authority, both in opinions and decisions, before our Revolution, and in our sister states, for holding that marriage articles of an infant as to her own real estate, equitable *333 and just in their provisions, will be supported. There is not, in our own state, an example of a positive decision to the contrary.
2. There is still more authority for holding that a court of equity, will not interfere with such a settlement of an infant, so long as she remains under the marriage disability.
3. There cannot be found a case in which, during the continuance of that disability, such a settlement has been set aside, upon the application of any one.
4. And as to personal property, the whole stream of decisions is to support the settlement.
Thus in this aspect of the case the complaint should be dismissed.
Second. Next, considering the case as affected by the statutes of 1848 and 1849.
1. If the marriage contract had been made by the plaintiff in New York, and she had been a citizen of New York, the whole of the real estate would have vested in the wife, free from the debts or control of the husband, with full power to convey it. This unlimited authority could have been exercised by her immediately upon coming of age, in favor of her husband, by a conveyance at any rate to another, to be transferred to Mm. (2 Seld., 422.)
In this view the provision, preserving in full force contracts made in contemplation of marriage, must be considered at least, as sustaining all which before the law of 1848 and 1849, would have been sustained, and as sanctioning the non-interference of a Court of equity subsequently, where it would not have interfered before.
2. By the true construction of the clause in the statutes in question, the ante-nuptial contracts of infants are witMn the provision as much as those of adults. If in other respects they are unimpeachable, they are to remain in force.
3. These views equally apply to the personal property of the plaintiff, covered by the settlement.
4. As to the legal effect of the contract being made in New Jersey, when the plaintiff was a citizen of that state, it is sufficient to observe, that it has not been shown to us, that by the law of New Jersey, the plaintiff could sustain this action. Until tMs is done, we are to be guided by the law of our own state, to *334 a tribunal of which the application is made. (Monroe v. Douglass, 1 Seld. R., 447, Willard, J.); Hodges v. The Tennessee Marine Co., 4 Seld., 421, and cases.)
The judgment must be affirmed, with costs.
Bosworth, J.
—The rule seems to be well settled, that, a female infant is bound by a settlement of her personal estate made in contemplation of her marriage. The reason assigned for the rule is that such personal estate becomes by the marriage the absolute property of the husband, and the settlement is in effect his settlement, and not hers. The settlement affects and restricts the interest which he would take in her personal property by his marital right, and does not limit or impair any rights she would otherwise have.
The rule seems to be also established that her settlement of her real estate is not absolutely void, but is voidable on her becoming of age. That she cannot avoid it during coverture without the concurrence of her husband, and that he will not be permitted to aid an effort by her to rescind and avoid it. Such a rule, practically, prevents her from avoiding it, unless she outlives him, and then, only, after his death.
The acts of 1848, (ch. 200, p. 307 of Laws of 1848,) and of 1849, (ch. 375, p. 528, of Laws of 1849) have removed the reason of the rule on which such settlements of personal estate have been upheld. Thefintended husband would not acquire by the contemplated marriage, any right to or interest in, either the personal or real estate, or in the income and profits from either. An ante-nuptial settlement, (made after those acts were in force,) which gave rights to the husband in the property of the wife, would deprive her of interests, which she would not lose by force of the marriage. To such extent they impair rights she otherwise would have.
As those statutes allow her “to convey and devise real and personal property,” . . “in the same manner and with like effect as if she were unmarried,” I think it should be held that she may, during coverture, and on becoming of age, avoid any conveyance made by her during infancy, and which is voidable merely because it was so made. To have the benefit of- those statutes she should be permitted to do such acts, proper in them *335 selves, and equitable in their object and results, as will enable her to give a good title to the property she is permitted to sell, and thus have a fair opportunity to obtain for it a just price or consideration.
But although those statutes have removed the reason of the rule on which settlements of personal estate, made by a female infant have been upheld, still there are difficulties in the way of maintaining this action.
Section 4 of the act of 1848, and section 3 of the act of 1849, are in these words, viz.: “All contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place.”
Although this cannot mean that all such contracts shall be valid and incapable of being rescinded, whether procured'by imposition and fraud, or made by an infant or an adult, or whether grossly inequitable or not; yet it may be fairly construed to mean, that all such contracts as may be made, and would be valid, if these statutes had not been passed, shall be held valid notwithstanding anything contained in the statutes themselves.
It may possibly have been the purpose of that section, to save ante-nuptial contracts already made from the effect of the 2d section of the act of 1848, the terms of which were comprehensive enough, to divest her real and personal estate, of any claims of her husband in or to it.
But I think it quite clear that it refers to contracts to be made, whether it includes those previously made or not.
If so the deed of settlement is valid and unimpeachable on the mere ground that the plaintiff was an infant when she executed and delivered it.
That deed declares that she was at the time a citizen of New Jersey. It was executed on the day of her marriage. In the absence of any allegation to the contrary, it is a fair presumption that the terms and provisions of the deed were agreed upon and the deed executed and delivered in New Jersey, and the marriage solemnized there. If so the validity of the marriage contract itself, and of the deed of settlement, depend on the laws of New Jersey, "and what they are is neither alleged nor proved.
If the statutes of this state to which reference has been made, *336 had not been passed, the courts of this state would decide the case, presuming the laws of New Jersey to be like those of New York, and refuse to rescind the contract. I am not satisfied that this Court is at liberty, to act on the presumption that the New Jersey Legislature have altered what was otherwise settled law, as it has been altered by the Legislature of this state.
Issue has been born of a marriage entered into upon the consideration, among others, of this ante-nuptial contract. That contract vests rights in such issue. It is anomalous, if such a contract, entered into without fraud or undue influence, and not inequitable in its provisions, can, after marriage and issue born that is provided for by it, be rescinded merely by reason of the infancy of one party, when it has become impossible to restore any of the consideration which induced it, or to put the parties in statu quo.
I think the judgment should be affirmed.
Judgment affirmed.