JOHN T. CASON et al. *v.* BENNETT M. HUBBARD et al.

1. CHANCERY: PLEADING: AVERMENT IN A BILL OF TITLE OF FEME COVERT IN A SLAVE.—In a bill by a married woman to annul a sale of a slave made by her husband and herself during her infancy, it is not necessary that the complainant should set out the particular manner in which she acquired title, or to show in what State her title vested. It is sufficient if the bill allege generally that the slave was the sole and separate property of complainant.

2. HUSBAND AND WIFE: INFANT FEME COVERT CANNOT MAKE A DEED TO REALTY.—An infant *feme covert* cannot make a valid acknowledgment to a deed of real estate situated in this State. See *Markham* v. *Merritt*, 7 How. 437; *Sanford* v. *McLean*, 3 Paige, 117; *Bool* v. *Mix*, 17 Wend. 119.

3. SAME: INFANT FEME COVERT CANNOT MAKE A BILL OF SALE TO A SLAVE.— The Act of 1846, in relation to separate property of married women (Hutch. Dig. 498, § 4) authorizes a married woman owning slaves in her sole and separate right, to contract for a sale of such slaves jointly with her husband: "Provided that all such sales shall be evidenced by bill of sale under seal, acknowledged by such married woman, as deeds of married women are required by law to be acknowledged." This provision does not refer alone to the *form* of the acknowledgment, but it requires that everything essential to the validity of an acknowledgment of a deed to realty by a married woman should be observed; and hence a bill of sale to a slave, executed by an infant *feme covert*, is not valid and binding on her.

4. SAME: PROOF OF TITLE OF FEME COVERT IN A SLAVE: CASE IN JUDGMENT.— Proof that the guardian of an infant female removed to this State with her property, including the slave in controversy, in the year 1846; that she married in the year 1854; and thereupon the slave was delivered to her by her guar-

dian as her property; and that she soon thereafter resided with the defendant in this State, who bought the slave, taking a joint bill of sale from her and her husband, is sufficient, in the absence of all proof to the contrary, to show, in a suit by her to annul the sale of said slave on the ground that she was an infant, when it was made, that she was married in this State, and acquired and held title to the slave under its laws.

ERROR to the Chancery Court of Monroe county.    Hon. Joel M. Acker, chancellor.

This was a bill filed by Martha A. Boone, whilst the widow of James C. Boone, for the recovery of a slave named Charles, and his hire.  The bill alleges that in March, A. D. 1854, the complainant intermarried with the said James C. Boone while she was a minor of the age of sixteen years.  That at the time of her marriage she owned a handsome estate, and among other property "she was the owner of a slave named Charles, worth about $1250, and whose hire is worth about $300 per annum.  That after said marriage, and after her guardian had handed over to her and her husband the said slave Charles, together with her other property, to wit, on the 27th day of July, 1855, while she was yet a minor of the age of eighteen, her said husband sold and delivered said slave to Cason, and who, and his sub-vendees, have since had the use and possession of the same."

It is further alleged, that the sale of said slave—who was her (complainant's) sole and separate property—by her late husband, conveyed no right or title to the said purchaser, as her said husband had no right or power to sell the said slave; and that she is still entitled to the said slave and his hire.  The prayer is for a specific recovery of the slave and for hire.

To this bill the defendants demurred, and assign the following causes :

1.  Because complainant's remedy is at law, and not in equity.

2.  Because the bill does not show that the complainant was entitled to hold the said property sought to be recovered, against the marital rights of her husband.

3.  Because if held as her separate property, her marriage at the time of the sale thereof does not avoid said sale, under the

statutes of this State, securing to married women the property owned by them at the time of their marriage.

This demurrer was overruled, and the defendant answered, denying all knowledge of the marriage of complainant, and of the ownership of the property sued for; and admits, that in July, 1855, he purchased the slave Charles from complainant and her husband, and paid for the same $1100, and that he took from said parties a bill of sale, executed and acknowledged by both of them in due form of law, which is made an exhibit. The answer states, that complainant and her husband had been for a short time, and were at the time of the said sale, boarding with him, but denies that the defendant knew then, or knows now, that she was under age. It is also stated, that Boone was in the possession of said slave when he sold to defendant, and that the defendant is an innocent purchaser without notice; that since the death of Boone, the complainant has recognized said sale, and expressed herself fully satisfied therewith. It is further stated, that the slave Charles was sold to procure money with which to procure the necessary clothing and support for complainant and her husband; and the defendant insists that if the sale is annulled, that he is entitled to have the $1100 paid for the slave refunded.

The bill of sale by complainant and her husband is in due form of law, and regularly acknowledged.

It was proven by the grandfather of complainant, that she was born on the 21st day of October, 1836; that her father died in Alabama previous to the year 1846; and that, on the division of his property, the slave in controversy was set apart to complainant as a portion of her estate; that in 1846, the witness, as guardian of complainant, removed the slave with her other property to Monroe county in this State; that soon after her marriage with Boone, witness settled his guardianship and delivered the slave Charles, with complainant's other property, to her and her husband.

It was proven by the defendant, who was examined as a witness in open court, that he paid the purchase-money for said slave partly in the board of complainant and her husband, and partly in notes and accounts on the husband, and that $270 was paid in cash to the complainant.

During the progress of the suit, the complainant intermarried

with Hubbard, and the suit was thereafter, by consent of parties, ordered to be prosecuted in the joint names of Hubbard and wife.

On final hearing, the chancellor decreed in favor of complainant, a specific recovery of the slave Charles, and his reasonable hire, and directed, in stating the account, that complainant be charged with the sum ($270) paid in cash, by defendant, to her as a part of the purchase-money.

From this decree the defendant sued out this writ of error.

*Sale* and *Phelan*, for plaintiff in error.

I. We assume, as a general proposition, that when a statute designates a character of person, upon whom it confers certain rights and powers, and imposes certain obligations, a person who predicates his rights upon the assumption of being that character, must accept such statute as a whole.   He cannot claim the application of that statute to himself, in part, and deny its application as to the balance.   If he possesses the character specified for one purpose, he must admit its possession by him for all purposes.   He cannot claim the character in order to be invested with a right, and then deny the character, under a power given by the statute, to the same character, when alleged against him, in order to divest him of that right.   If he be the character specified to hold, he is the same character, specified as empowered, also to sell.   The proposition is undeniable, and is thus stated by the Supreme Court of Georgia in a case involving the principle under consideration :

" If she (the *feme covert*) claim the rights there given to a married woman, she must also assume the obligations therein imposed." 16 Geo. 102.

If, therefore, Mrs. Boone was under the age of twenty-one years when she married and received this property, and the statute does not apply to such a character, then the marital rights, under the common law, attached to it, and the husband has the power to sell the same.

On the other hand, if she is the character included in the statute, enabling her to hold said property, she is the same character which that statute enables to sell her property in a prescribed form ; and having thus sold it, her title is gone.

II. But apart from this general proposition, the statute applies by express words to this complainant.

We lay out of view the right of an infant *feme covert* to make a valid sale of her lands at common law. We also waive a consideration of the principle which enables an infant *feme covert* to avoid her relinquishment of dower in her husband's lands. Neither is it material to discuss the right of an infant *feme covert* to make a valid sale of her separate personal property at common law, or rather under the English decisions. Our court has decided that a female does not take, under our statute, the rights of a *feme sole* in reference to such separate property as at common law. The statute must stand for itself, a subject for construction according to legal rules, in all questions arising under it.

The first and most important rule is, that the express words of the statute shall be first considered; and although they may be disregarded in certain cases, there is nothing in this case involving the application of such rules.

1. The words of the statute are :

"Any married woman may become possessed," &c.

"Any woman, possessed of property, who shall marry," &c.

"When any woman during coverture, shall become," &c., "such property shall belong to the wife," &c.

"When any married woman shall have a plantation and slaves," &c., . . . . It shall be competent for her to sell, &c.

The terms "any" so definitely and repeatedly used, includes an infant wife, inevitably, unless controlled by some other word or provision (which cannot be made to appear), or unless the term "woman" only means a female of the human species, who has reached a certain age. But the term is not thus restricted. The word "in its general sense, means a female of the human species, without regard to age; although, in a more restricted sense, it is applied to the female who has reached a certain age." 2 Bouvier's Law Dict.

2. The object of the law was the protection and preservation of the rights of married women. If the proposition first discussed be true, to confine the terms used to adult married females, would exclude from the benefit of the law the most deserving and unprotected portion of married females. *Olive* v. *Walton*, 33 Miss. 103.

3. To decide that an infant married female may claim to hold

under the statute, and to deny her the right to contract, as given by the law, would be worse than to exclude her altogether, and let the property go to the husband. To hold, and be compelled to keep, may amount to entire loss, or be productive of incalculable harm. A thousand reasons and necessities may exist why the specific property held by the infant wife should be disposed of, the prevention of which would be infinitely more to her pecuniary injury than if it belonged to her husband, with the right to do with it as he pleased.

But again : the power to contract for the support, maintenance, and protection of the infant wife's property, is identical with her power to sell the same. If she can't sell, neither can she make any contract in reference to it, when kept in her own possession. Who would contract with an infant wife for any one of the thousand things demanded in the enjoyment and protection of her property, when such contract is void? The inconvenience and probably injury that would result to the married woman holding property under the statute, by the adoption of a certain construction, has been decided by the court to be a good ground for refusing such an interpretation. *Work* v. *Glaskins*, 33 Miss. 543 of case. But we need not press this argument farther. If the property of an infant married female is forced upon her by law, and she is then forced to keep it, and denied the power to contract with reference to it, until she arrives at twenty-one years, perhaps five or six years, in a large majority of cases, it would be infinitely better to have excluded her from the provisions of the law altogether.

4. The reason of the law refusing to infants the power to contract, is avoided under the statute. An infant, under certain years, is presumed incapable of taking care of his rights, from defect of understanding. The contract is supposed to be made with the infant alone. This principle is guarded against, under the statute, by not permitting the married woman to contract by herself. It requires that her husband shall join with her in the sale, or it is void. Surely this protection is ample against all presumptions arising under the general law of infancy.

*Locke E. Houston*, for defendant in error.

The main question in this case is, can a married woman who is a

minor, make a valid binding contract, or sale of her slaves ? I respectfully submit that she cannot.

At common law the rule was, that a *feme covert*, having a separate estate, acted with regard to it as a *feme sole*. *Henderson* v. *Guyott*, 6 S. & M. 209.

Could an infant *feme sole*, who owned a separate estate, at common law, sell and dispose of the same ? If not, then at common law, neither could an infant *feme covert*. If so, I have never yet seen the rule of law that allowed it. Well, our statutes of 1839 and 1846 make all property, owned by a *feme sole* at the time of her marriage, her "separate property." Now, has that statute enlarged her right to contract after marriage, in reference to that "separate property," beyond her common law rights ? I answer, no. The statutes have not extended her powers of contracting, or of binding herself or her property. On the contrary, it has curtailed her powers of contracting in reference to her separate property. *Henderson* v. *Guyott*, 6 S. & M. 209.

If, then, at common law, an infant *feme covert* could not contract in reference to her property, and our statutes have curtailed her common law rights, unquestionably an infant *feme covert* cannot, under those statutes, now contract in reference thereto.

But counsel tell us that under our system, an infant *feme covert* does not need the protection of the law to save her from making ruinous contracts ; for the law has provided her sufficient protection, in the fact that it denies her the right of selling her property without the husband joins with her ; and that "surely this is ample protection against all presumptions arising under the general law of infancy." In answer to that, I will simply remind counsel that it affords an infant no protection at all, because that very law requires that she shall " sign, seal, and deliver the deed as her own voluntary act and deed, without any fear, threat, or compulsion from her husband ;" and all this must be done, or at least acknowledged, privately, separate and apart from her husband. It is, then, her own unbiassed, uninfluenced, undirected act: is bound to be so, in order that it may be valid and legal. What protection, then, I ask, does her husband give her ? And what qualification or superiority has a married girl of sixteen years over a single one of the same age, when they both are compelled to think

and act for themselves, uninfluenced, undirected, unbiassed by others? The argument of counsel, on principle, is unsound, and on authority, it will not bear the test.

I lay this down as a legal proposition, and as a rule of action for courts: that all statutes making innovations on the common law must be strictly construed; and must not be made to mean more than their language, on a fair construction, would import. *Lock* v. *Miller*, 3 Stew. & Porter, 13; *Melody* v. *Real*, 4 Mass. Rep. 471; *Webber* v. *Craim*, 13 Pickering, 284.

Unless, therefore, the Woman's Law of Mississippi, in words direct, or in language plainly import, an intention to take away the protection given to infancy by the common law, I presume that courts of chancery, the special guardians of infants and females, will not lend themselves to a system of judicial legislation for the purpose of divesting them of that protection.

But we are told by counsel, that the Statute of 1846, under which the negro in controversy was held, is broad and comprehensive, embracing all *femes covert*, as well those who are minors as those who are adults.

In the first place, counsel have to some extent misquoted the Statute of 1846. That statute reads thus:

" The products and proceeds of the labor of all slaves owned by a married woman, in her sole and separate right, shall inure to her sole and separate use and benefit, and it shall be competent for her, jointly with her husband, to make any contract for the sale or hire of any such slaves, for their necessary clothing, maintenance, care, and support, and for the employment of any agent or overseer, for their management and control," &c.    Hutch. Code, 498, § 4.

Now we are told by counsel, that the term, " a married woman" ("any," counsel have improperly quoted it), "so definitely and emphatically used, includes an infant wife inevitably, unless controlled by some other word or provision." In other words, counsel say, that the terms used in the statute embrace as well the infant as the adult, in speaking of who may sell, and how they may sell. Now let us test that in a fair way. The law of June the 12th, 1822, in reference to the sale of real estate by *femes covert*, says: "No estate of ' a' *feme covert*, in any lands, tenements, or hereditaments, lying and being in this State, shall hereafter pass by her deed or convey-

ance, without a previous acknowledgment made by her, on a private examination, apart from her husband, before a judge or other officer authorized to take such acknowledgment, that she signed, sealed, and delivered the same as her voluntary act and deed, freely, without fear, threat, &c., and a certificate thereof written on or under the said deed of conveyance, &c. And every deed or conveyance, so executed and acknowledged by a *feme covert*, and certified as aforesaid, shall release and bar her right of dower in the lands, tenements, and hereditaments mentioned in such deed or conveyance."

Now it will be seen that the language of this act, and the language of the Act of 1846, in reference to married women, is identically the same. This act says, the estate of " a *feme covert* in lands," &c.; and the Act of 1846 says, all slaves owned by " a *feme covert.*"

Now the language of these two statutes being identical, it is fair to suppose that their construction would be the same. And Mr. Phelan would say, that the Statute of 1822 (Hutch. Code, 608, 609, § 19), when it speaks of " a *feme covert*" selling her lands in a certain way, includes " an infant *feme covert* inevitably," unless controlled by some other word or provision; and yet there is no other controlling word or provision in the Statute of 1822; and yet this court (Justice Sharkey) has said that its language was not broad enough to embrace an infant *feme covert.*

" When a party is an infant as well as a *feme covert*" (says Judge Sharkey), " the disability arising from infancy remains, although the deed has been duly executed by her according to the requirements of the statute." See case of *Markham* v. *Merrett*, 7 How. Miss. R. 437, 444; see also, *Bool* v. *Mix*, 17 Wend. 119; *Sandford* v. *McLean*, 3 Paige, 117–20–21.

Of what statute was Justice Sharkey speaking? The Statute of 1822, of course, for that was the only one on the statute-book directing the manner in which *femes covert* should convey their real estate.

It is worthy of remark here, that that statute is only directory, as to the mode in which a *feme covert* should convey, and it was not enabling to those who could not have conveyed at common law. And so with the Statute of 1846. It creates no new persons who

shall convey. It enables no one to contract and convey, who could not have done so at common law; but only points out a mode of contracting to those who had the ability theretofore.

At common law, a *feme covert* was a *feme sole*, as to her separate property, and could contract in reference thereto as a *feme sole;* but our statutes have curtailed that power, and limited their ability, so as that they can only contract jointly with the husband. Our statute has given the *feme covert* no powers of contracting in addition to what she had at common law. At common law, an infant *feme covert* could not contract. How then can an infant *feme covert*, under our statute, which this court has again and again said has given no new powers or ability? *Davis* v. *Foy*, 7 S. & M. 64; *Frost* v. *Doyle*, 7 S. & M. 68.

Statutes are not to be construed as giving additional, or taking away common law rights, unless the intention to do so is manifest and palpable. *Melody* v. *Real*, 4 Mass. R. 473.

Our statute never was intended to produce the consequences to infant females, who marry in infancy, to emancipate them from the disability of infancy; and even that statute, which upon their marriage in infancy requires that the guardian shall deliver up her property to the husband, only changes the guardian, without giving her any capacity to contract beyond other infants, or without giving her any other political or municipal powers or rights, which do not belong by law to infants generally. *Taunton* v. *Plymouth*, 15 Mass. 203.

" Under the statute just alluded to (Hutch. Code, 506, § 135), the husband's right to act for his infant wife in all matters in which her personal estate is to be received, clearly appears; and in addition to that, the husband is thereby clothed with the same powers over the infant wife's property and rights that the guardian would have." *Frisby* v. *Harrison*, 30 Miss. R. 457.

" The marriage of an infant may and does remove her person and property from the control and management of her father, but does not authorize her to make binding contracts, beyond other infants." *Taunton* v. *Plymouth*, 15 Mass. 204.

(Only so much of the argument of counsel as relates to the power of an infant *feme covert* to convey her slave is given.)

HANDY, J., delivered the opinion of the court.

This bill was filed by Martha A. Boone, then the widow of James A. Boone, deceased, to recover from the plaintiffs in error a certain slave, alleged to be her sole and separate property, and which had been sold and conveyed by the deed of herself and husband to Cason, on the 27th July, 1855, whilst she was an infant, of the age of eighteen years. The ground of the relief sought, is the invalidity of the deed as against the rights of the complainant, by reason of her infancy at the date of its execution; and the relief prayed for, is a decree in her favor for the slave and for hire.

A demurrer was first filed, and overruled, which presents the first ground of error relied on.

It is insisted, that the bill does not sufficiently show that the complainant was entitled to the slave as her sole and separate property, under the laws of this State, and, therefore, that the demurrer should have been sustained.

The allegations of the bill are not very explicit; but they state, in general terms, that the slave was "owned by her at the time of her marriage" with her deceased husband; that "he was handed over to her and her husband by her guardian after her marriage;" that he "was her sole and separate property;" that "her husband had no right or power to sell him, but that she is still entitled to the said slave." These allegations are certainly sufficient, on demurrer, to show that the slave was the sole and separate property of the complainant. It is true, that there is nothing in the bill positively showing that he was so held by her under the laws of this State. But that is immaterial for the purposes of the demurrer. For if it be true, that the slave was held by her as her sole and separate property at the time of the conveyance by the husband, that would be sufficient to show that the joint deed of herself and her husband, she being then an infant, was insufficient to convey her title; for generally such a conveyance would be invalid, and it would require the authority of a statute to render it valid. And under these allegations, it would be incumbent on the defendants to show, that her separate estate had been legally conveyed, whether it arose under the laws of this State or of any other State; and that the conveyance was authorized by the laws of the State by which her separate property may be governed. The

separate estate was, therefore, sufficiently averred to call for an answer by the defendants.

After the demurrer was overruled, the defendant Cason answered, claiming to be a purchaser for valuable consideration, and setting up the joint deed of the husband and wife to him, executed and acknowledged by them in the form required by the statute for the conveyance of the separate property of the wife, as conveying a valid title to the slave.

The question arising upon this deed is, whether it is binding upon the wife, who was, at its date, under the age of legal capacity; for it is admitted, that it was executed and acknowledged by the husband and wife according to the form required by the statute.

The statute authorizes a married woman, owning slaves in her sole and separate right, to make a contract, jointly with her husband, for the sale of such slaves; *provided,* that all such sales " shall be evidenced by bill of sale under seal, acknowledged by such married woman, as deeds of married women are required by law to be acknowledged." Hutch. Code, 498, § 4. It clearly appears to be the intention of this statute, that such sales should not be valid unless acknowledged in compliance with the same essential requisites necessary to the valid acknowledgment of a deed for land by a married woman. This provision of the statute cannot refer merely to the form of the acknowledgment, but it must be taken to require such an acknowledgment in all essential particulars, as would be required in an acknowledgment of a deed conveying real estate by a married woman. And it has been held by this court, that an acknowledgment of such a deed by an infant married woman, is invalid and not binding upon her unless ratified by her after she becomes of legal age. *Markham* v. *Merritt,* 7 How. 437. And this is well sustained by decisions in other States. *Sanford* v. *McLean,* 3 Paige, 117; *Bool* v. *Mix,* 17 Wend. 119.

It is urged, in opposition to this construction of the statute, that it deprives the husband and wife, when she is a minor, of the power to make contracts necessary for the support and protection of her separate property, because that power depends upon the same clause of the statute which also authorizes the sale of her slaves by the joint contract of herself and her husband. It is true that the power to the wife, jointly with her husband, to make contracts for

the sale of her slaves, as well as for their necessary clothing, maintenance, and support, is conferred by the same clause of the statute; but the proviso contains an important restriction upon the power to sell, which does not apply to the power to make contracts for necessaries; and prescribes the manner in which such contracts of sale shall be made, to wit, by bill of sale under seal, acknowledged by the wife as deeds of married women are required to be done.

As to the inconvenience and inexpediency of preventing a sale of the slaves of the wife during her minority, which is suggested as a reason against this construction, we do not perceive the force of the objection. For the wife is, during minority, in legal contemplation, not possessed of that judgment and discretion which would enable her to make judicious dispositions of her property; and it was one of the primary objects of the statute to place her separate property beyond the disposal of her husband, so that the legislature might well have intended, as it must be presumed from what they have enacted that they did, to give no power to sell the wife's slaves until she should attain to the age of legal power and discretion.

Again: it is insisted that the decree is erroneous, because there is no sufficient proof that the complainant held the slave under the laws of this State.

This objection is answered by the view taken in considering the same objection as presented upon the demurrer.

But it is shown by proof that the slave was brought to this State in the year 1846, and held by the guardian of the complainant; and shortly after her marriage to Boone, in the year 1854, that the slave was delivered over by her guardian to her and her husband, as part of her share of her father's estate; and that they continued to reside in Monroe county, in this State, after their marriage, and boarded with the defendant Cason. These circumstances seem to warrant the conclusion that the marriage took place in this State. And indeed it appears to have been conceded in the court below that the slave was the separate property of the complainant under the laws of this State; for the defendant placed his title expressly upon the ground that the joint deed of the husband and wife conveyed a

valid title to him under the laws of this State, which is a plain concession that the rights of the parties are governed by our laws.

Let the decree be affirmed.